[No. 16656-2-III. Division Three. February 2, 1999.]

JULIE N. JANSON, *Respondent*, v. NORTH VALLEY HOSPITAL, *Appellant*.

894

*Michael J. McMahon* and *Daniel J. McCoy* of *Etter, Mc-Mahon & Lamberson*, for appellant.

*Stewart R. Smith* and *Steven C. Lacy* of *Lacy & Kane, P.S.*, for respondent.

KURTZ, J. — Julie Janson sued North Valley Hospital for sexual harassment and retaliatory discharge. On the issue of her damages, the hospital offered evidence that she failed to disclose a drug conviction on her employment application and that the hospital would have terminated her employment upon the discovery of this fact. In response, Ms. Janson offered evidence that she advised the hospital of her conviction at the time she completed the employment application and, consequently, the hospital knew of her conviction at the time it hired her. The trial court refused to allow evidence regarding the conviction and its omission on the employment application, and it further refused to give an instruction that would have allowed the jury to limit Ms. Janson's damages if the jury determined that the hospital would have terminated her upon the discovery of the omission of the conviction on the employment application. On appeal, the hospital assigns error to the exclusion of the conviction and employment application

evidence and the failure to give the damage instruction based upon it. Also, the hospital challenges two other instructions, the instruction informing the jury of the elements of sexual harassment, and the instruction informing the jury that any award would be subject to federal income taxes. We reverse in part and remand for a new trial on the issue of damages.

## FACTS

In 1990, Julie Janson quit her employment as a nurse's aide at North Valley Hospital and moved to Alaska. Two years later, while living in Alaska, she was found guilty of attempted misconduct involving a controlled substance. The drug was cocaine. She was placed on probation, and upon satisfaction of the conditions of her probation, her conviction was expunged on November 5, 1993.

In June 1993, Ms. Janson again sought employment with North Valley Hospital. In connection with that employment, she completed an employment application that contained the following question: "Have you been convicted of an offense within the past seven (7) years?" Ms. Janson placed an "X" in the box to indicate a negative response. At the end of the application, she signed a certification which read:

> I certify that the information set forth in this Application for Employment is true and complete to the best of my knowledge. I understand that, if employed, falsified statements on this application or failure to furnish all requested information shall be considered sufficient cause for my dismissal.

After conducting a background check through the Washington State Patrol, the hospital hired Ms. Janson on June 21, 1993.

In December 1995, Ms. Janson was working in the central service department of the hospital. Her supervisor was Kevin Richart. According to Ms. Janson, she was the victim of Mr. Richart's sexual harassment. She states he

made inappropriate comments to her and stood unnecessarily close to her despite her efforts to maintain a distance. She also testified Mr. Richart aggressively grabbed her hand while setting up instruments. She related that on one occasion, he summoned her to central supply where she found him dressed in thin cotton scrubs and situated in a provocative position. On another occasion, according to Ms. Janson, he surreptitiously entered the women's private changing room while she was undressing.

Ms. Janson complained about Mr. Richart's conduct on December 21, 1995. As a result, Susan Cutler, Human Resources Director, met with Ms. Janson and Mr. Richart. After that meeting, Ms. Cutler instructed their supervisor, Bruce George, to monitor the situation.

Ms. Janson and her supervisor continued to have problems. For that reason, Ms. Jason tape-recorded Mr. Richart without his knowledge and then asked Mr. George to listen to the tape. In early January 1996, Mr. George issued a written warning to both employees stating that further disruptive conduct would be grounds for dismissal. Mr. George instructed Ms. Janson to meet with Ms. Cutler. Ms. Janson did not attend the meeting. Ms. Janson did not report for work as scheduled on January 9 and 10.

On January 12, 1996, Hospital Administrator Don James met with Ms. Janson to discuss her complaints about Mr. Richart, and the hospital's complaints about her job performance and absences. Ten days later, Ms. Cutler gave Ms. Janson notice of the hospital's intent to terminate her employment. The notice listed the reasons for her termination, including absences and the surreptitious taping of Mr. Richart, and informed her of the right to a hearing. After the hearing, Ms. Janson was terminated on January 26, 1996. Following her termination, she sued the hospital alleging sexual harassment and retaliatory discharge.

Before the trial, Ms. Janson filed a motion in limine, asking the court to exclude evidence of her drug conviction. In support of this motion, she presented evidence the hospital knew about the conviction prior to her employment and

made a decision to hire her in spite of it. She presented evidence the hospital did not raise this issue at the termination hearing, even though the hospital now concedes it knew about the conviction at the time of the hearing. In response to this evidence, the hospital admitted it was aware that Ms. Janson had experienced some trouble in Alaska, but the hospital denied that it was aware that she had been convicted of a crime involving cocaine.

The trial court refused to allow the evidence. The court emphasized the absence of credible evidence that the hospital would have refused either to hire or fire Ms. Janson upon the discovery of the criminal conviction and its omission from her employment application. The court reasoned the conviction had nothing to do with the merits of the case. Having refused to allow this evidence, the court also declined to give an instruction that would have allowed the jury to consider the evidence in determining whether Ms. Janson was damaged.

The court instructed the jury on the elements of sexual harassment in Instruction No. 9 as follows:

> To establish her claim of sexual harassment against the defendant North Valley Hospital the plaintiff has the burden of proving each of the following propositions:
>
> 1. That there was language or conduct of a sexual nature or because of the plaintiff's sex;
>
> 2. That this language or conduct was regarded by the plaintiff as unwelcome and that the plaintiff did not solicit or incite it;
>
> 3. That the conduct or language complained of was so offensive or pervasive that it could reasonably be expected to alter the conditions of plaintiff's employment or could reasonably be expected to make the job more difficult to do[.]

Focusing on the language that the conduct complained of "could reasonably be expected to make the job more difficult to do," the hospital objected to this instruction.

The court also instructed the jury that any award for Ms.

Janson would be subject to income tax in Instruction No. 15(a) as follows:

> If there is a recovery by Plaintiff in this action, there will be federal income tax payable thereon as the amount of such damage awards is income for federal tax purposes.

The hospital objected to the jury instruction, arguing in the absence of any evidence regarding income taxes, the instruction only encouraged the jury to speculate about it.

The jury found the hospital liable for sexual harassment and retaliatory discharge. It awarded Ms. Janson $7,451.70 for lost wages and $50,000 for emotional harm. The hospital appeals.

## ANALYSIS

Did the trial court err by excluding evidence of Ms. Janson's criminal conviction and her failure to reveal it on her employment application?

North Valley Hospital contends it would have dismissed Ms. Janson as soon as it learned that she failed to disclose the conviction on her employment application. Consequently, the hospital asserts that by excluding this evidence, the trial court improperly excluded evidence relevant to her damages. The hospital's contention raises two issues. First, should this court follow *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 115 S. Ct. 879, 130 L. Ed. 2d 852 (1995), which holds that after-discovered evidence of employee misconduct is admissible and impacts an award given to an employee? Second, because all employee misconduct does not necessarily merit dismissal, does the court or the jury make the threshold determination regarding whether the conduct would have resulted in termination?

In this case, the trial court followed the *McKennon* after-discovered evidence rule, but concluded that even under *McKennon*, the court must make the initial assessment regarding the severity of the misconduct and, on that basis,

did not allow it. Additionally, the trial court employed an analysis under ER 403, which permits the trial court to exclude even relevant evidence if its limited probative value is outweighed by its prejudicial impact. The hospital assigns error to this ruling because it believes the court should have permitted the jury to make the determination regarding whether the misconduct would have resulted in Ms. Janson's dismissal.

Washington courts have not decided whether after-discovered evidence of employee misconduct is admissible in a wrongful discharge case based upon sexual harassment. Although not directly on point, *Hollingsworth v. Washington Mut. Sav. Bank*, 37 Wn. App. 386, 681 P.2d 845, *review denied*, 103 Wn.2d 1007 (1984), provides some guidance. In *Hollingsworth*, a bank employee brought a retaliatory harassment claim against his employer. The bank employee claimed he was harassed after he testified in a fellow employee's race discrimination lawsuit against the bank. During discovery in that action, the bank learned of good cause for discharging the employee and, in fact, did so. The employee then amended the complaint to add a retaliatory discharge claim. The Court of Appeals upheld the bank's use of the employee's misconduct in defending the discharge claim, but not the harassment claim. An employer should not be able to justify unlawful and discriminatory conduct based upon after-discovered legitimate and nondiscriminatory reasons for discharge. *Hollingsworth*, 37 Wn. App. at 394.

In *McKennon*, the United States Supreme Court granted certiorari to resolve a split among the circuit courts of appeal regarding the admissibility of after-discovered evidence of employee misconduct in federal age discrimination litigation. *McKennon*, 513 U.S. at 355-56. Some circuits held that an after-discovered justification for an otherwise discriminatory discharge provided a complete defense, relevant both to the defendant's liability and the relief available under the federal law. *Wallace v. Dunn Constr. Co.*, 968 F.2d 1174, 1180-84 (11th Cir. 1992), *rehearing granted,*

*vacated*, 32 F.3d 1489 (11th Cir. 1994), *aff'd in part, reversed in part and remanded*, 62 F.3d 374 (11th Cir. 1995). Others held that such after-discovered evidence of employee wrongdoing should concern only the remedies available to the employee once liability was established, and that it should not be admissible unless the employer demonstrated that it would have discovered the evidence in the absence of the discrimination litigation because, otherwise, the employer would benefit from its discriminatory conduct. *Summers v. State Farm Mut. Auto. Ins. Co.*, 864 F.2d 700, 708 (10th Cir. 1988).

In *McKennon*, the Supreme Court rejected the cases holding that after-discovered evidence of misconduct acted as a complete bar to recovery in an age discrimination action, concluding that it affects only the amount of damages an employee may recover. The court further determined that the available remedies in discrimination cases involving after-discovered evidence had to be determined on a case-by-case basis, but remedies such as reinstatement and front pay ordinarily should not be available. *McKennon*, 513 U.S. at 361-62.

 Washington courts traditionally look to federal precedent for guidance in employment discrimination and wrongful termination claims. *Thompson v. Berta Enters., Inc.*, 72 Wn. App. 531, 536 n.4, 864 P.2d 983, *review denied*, 124 Wn.2d 1028 (1994). To paraphrase *McKennon*, once an employer learns about serious employee wrongdoing that would have led to legitimate discharge, it makes little sense to require the employer to ignore the information, even if it is acquired during the course of discovery and even if the information might have gone undiscovered absent the lawsuit. *McKennon*, 513 U.S. at 362. In such a case, the award for backpay should be calculated from the date of the unlawful discharge to the date the lawful basis for discharge was discovered. An absolute rule barring any recovery of backpay, however, would undermine federal and state antidiscrimination employment laws. *Id.* We agree with the superior court and hold that *McKennon* applies to claims brought under RCW 49.60.

Before an employer may rely upon after-discovered evidence of wrongdoing and thereby seek to limit the damage award, it must first establish the wrongdoing was of such severity that the employee would have been terminated on those grounds alone once the employer discovered the wrongdoing. *Id.* at 362-63. During the motion in limine, and more fully during the trial, the hospital made its offer of proof that while it was aware Ms. Janson had some trouble in Alaska, the hospital did not know she had been convicted of a crime involving cocaine. The hospital stated that it would have terminated Ms. Janson as the remedy for her failure to answer honestly the question regarding convictions on her employment application.

By way of response, Ms. Janson offered evidence that she informed the hospital of her Alaska conviction, but based upon her representations that the conviction was about to be expunged, she was advised not to disclose it on her employment application. She further points to the fact that the hospital did not raise this issue at her termination hearing. She argues that this litigation has placed the hospital personnel, to whom she disclosed her conviction, in a difficult position which they have resolved by disclosing only part of the truth. Moreover, she emphasizes the absence of any evidence of a hospital employment policy that would have required her dismissal based upon her failure to disclose a soon to be expunged conviction on her employment application.

The trial court's ruling on the motion in limine had the effect of determining as a matter of law that the hospital had failed to meet its threshold burden of establishing employee misconduct so serious that the employee would have been terminated on those grounds alone once the employer discovered the wrongdoing. Therefore, the summary judgment standard for appellate review applies. *Havens v. C&D Plastics, Inc.*, 124 Wn.2d 158, 176, 876 P.2d 435 (1994). This court engages in the same inquiry as the trial court. *Swanson v. Liquid Air Corp.*, 118 Wn.2d 512, 518, 826 P.2d 664 (1992). We uphold the judgment of the trial court if the

evidence considered by the court shows that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *Id.*

In order for the trial court to have determined as a matter of law that there was not employee misconduct so serious that it would have unquestionably led to termination, the court needed to resolve in Ms. Janson's favor the factual dispute regarding whether she disclosed the drug conviction to the hospital before she was employed. Based upon the evidence presented to the trial court, we can understand why a fact finder, on a more probable than not basis, would make that determination in favor of Ms. Janson. However, for the purpose of the motion, the hospital was entitled to have that factual dispute resolved in its favor. *Havens*, 124 Wn.2d 158. If Ms. Janson disclosed her drug conviction to the hospital before she was hired, its omission on her employment application might not have met the standard of wrongdoing required by *McKennon.* On the other hand, if she failed to disclose the conviction to the hospital before she was hired, a jury could have determined that its omission on her employment application constituted wrongdoing of such severity that the hospital would have terminated her on those grounds alone once it discovered the omission. For that reason, we conclude that there was an issue of material fact that precluded the court from deciding this issue as a matter of law. It should have been submitted to the jury.

▮▮▮▮ The trial court also based its decision to exclude this evidence on ER 403. As a general rule, the trial court must admit evidence that tends to make the existence of a material fact more or less probable. ER 401, 402. However, a trial court may exclude evidence if its probative value is outweighed by the potential that the evidence will unduly prejudice the other party or confuse the jury. ER 403. In this regard, the trial court is vested with broad discretion. *Brouillet v. Cowles Publ'g Co.*, 114 Wn.2d 788, 801, 791 P.2d 526 (1990). We review a trial court's balancing under ER 403 under a manifest abuse of discretion standard. *Carson v. Fine*, 123 Wn.2d 206, 225-26, 867 P.2d 610 (1994).

Ms. Janson's argument is that the evidence regarding her drug conviction was not relevant to her claim of sexual harassment and was likely to prejudice the jury against her. In its balancing under ER 403, the trial court concluded that in deciding whether Ms. Janson was the victim of sexual harassment and discharged because she complained about it, the jury would be prejudiced by the knowledge that she had been convicted of a drug charge.

Under *McKennon*, the evidence of the drug conviction and its omission from the employment application is relevant to Ms. Janson's damages. ER 403 has a presumption in favor of the admissibility of relevant evidence and the burden of establishing unfair prejudice is on the party seeking exclusion. *Carson*, 123 Wn.2d at 225. There is no question that the evidence of the drug conviction is prejudicial to Ms. Janson, but its probative value outweighs that prejudice. To hold otherwise would substantially undermine *McKennon* because evidence of employee wrongdoing sufficient to warrant dismissal is by its very nature prejudicial. The trial court abused its discretion in excluding the evidence of the drug conviction and its omission from the employment application.

Did the trial court err in its jury instruction explaining the elements of sexual harassment?

The hospital next contends the court erred in the wording of Instruction No. 9, which contained the elements of sexual harassment. The hospital objected to the wording of the third element which stated, "[t]hat the conduct or language complained of was so offensive or pervasive that it could reasonably be expected to alter the conditions of plaintiff's employment or could reasonably be expected to make the job more difficult to do." Specifically, the hospital argues the clause "[or] make the job more difficult to do" is subjective and not an accurate statement of the law.

In *Glasgow v. Georgia-Pacific Corp.*, 103 Wn.2d 401, 406-07, 693 P.2d 708 (1985), the court defined this element of sexual harassment by stating the plaintiff must prove:

The harassment affected the terms or conditions of employment. Casual, isolated or trivial manifestations of a discriminatory environment do not affect the terms or conditions of employment to a sufficiently significant degree to violate the law. The harassment must be sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment.

In a sexual harassment case, the elements instruction usually requires that the conduct be so offensive or pervasive that it would be expected to alter the employment conditions. *Delahunty v. Cahoon*, 66 Wn. App. 829, 836, 832 P.2d 1378 (1992); Washington Pattern Jury Instructions: Civil 330.23. However, in a concurring opinion in *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 25, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993), Justice Ginsburg commented that a plaintiff need not prove his or her tangible productivity declined because of the harassment, but rather a reasonable person would find the harassment "so altered working conditions as to 'ma[k]e it more difficult to do the job.'" This would appear to be the legal foundation for the addition of the phrase "[or] make the job more difficult to do."

While we do not find the court's additional explanation of "[or] make the job more difficult to do" to be particularly helpful, it is within the broad discretion of the court as to the language of its instructions. Jury instructions are to be read as a whole and a trial court is given broad discretion as to the language needed in the instructions. *Petersen v. State*, 100 Wn.2d 421, 440, 671 P.2d 230 (1983). Even if we assume the jury instruction is contrary to Washington law, the facts of this case relevant to the issue of hostile work environment support the jury's verdict. There is no reversible error because there was no prejudice. *Hue v. Farmboy Spray Co.*, 127 Wn.2d 67, 92, 896 P.2d 682 (1995).

Did the trial court err in its jury instruction explaining any jury award would be subject to federal income taxes?

The hospital contends the court erred in giving Instruction No. 15(a) that stated:

If there is a recovery by Plaintiff in this action, there will be

federal income tax payable thereon as the amount of such damage awards is income for federal tax purposes.

The hospital argues this instruction is misleading because it encourages the jury to speculate about the impact of taxes upon its damage award. The hospital emphasizes the lack of evidence regarding this subject.

In this case, the issue arises in an atypical context. Normally, it arises in a personal injury or wrongful death case in which the defendant is requesting the court to instruct the jury regarding the nontaxable nature of a compensatory damage award so as to prevent the jury from increasing the award to allow for taxes. In *Hinzman v. Palmanteer*, 81 Wn.2d 327, 334, 501 P.2d 1228 (1972), our Supreme Court upheld a trial court's refusal to give such an instruction. The *Hinzman* court, however, did recognize that in an appropriate case, such as a case involving high income and significant tax impact, an instruction on income taxes might be helpful. The evidence in this case regarding Ms. Janson's income does not warrant the application of this exception.

Since *Hinzman* was decided, the United States Supreme Court ruled, in a wrongful death action arising under the Federal Employers' Liability Act, that evidence of income taxes payable on the decedent's past and future earnings was admissible and held it was error to refuse to instruct the jury that an award of damages would be tax free. *Norfolk & W. R.R. Co. v. Liepelt*, 444 U.S. 490, 100 S. Ct. 775, 62 L. Ed. 2d 689 (1980). The Supreme Court reasoned that tax-conscious jurors may mistakenly assume that a plaintiff's recovery will be subject to federal taxation and therefore increase an award to ensure that the plaintiff is fully compensated. The decision in *Liepelt* has led some jurisdictions to adopt a rule that favors the juror's consideration of income tax consequences in determining the amount of compensatory damages, either by the introduction of appropriate evidence, an appropriate instruction, or both. John E. Theuman, Annotation, *Propriety of Taking Income Tax into Consideration in Fix-*

*ing Damages in Personal Injury or Death Action*, 16
A.L.R.4TH 589 (1982 & Supp. 1997).

Ms. Janson presents the other side of the story. All of the
relief requested by her, including her claim for emotional
distress, is subject to federal taxes. 26 U.S.C.A. § 104(a)
(West 1998). She is concerned that the jury may incorrectly
assume that it is not subject to federal taxes and be
influenced to minimize her award based upon that specula-
tion. At any rate, she asserts a simple statement of the tax
law relevant to her request for damage award will help the
jury and avoid confusion.

 If this case were tried under federal law, *Liepelt*
would apply and the jury would be instructed as requested
by Ms. Janson. *Gulf Offshore Co. v. Mobil Oil Corp.*, 453
U.S. 473, 486-87, 101 S. Ct. 2870, 69 L. Ed. 2d 784 (1981).
Nevertheless, only a minority of states have adopted *Lie-
pelt*. *Rego Co. v. McKown-Katy*, 801 P.2d 536, 539 (Colo.
1990). We decline to follow *Liepelt* because it assumes that
jurors will disregard their duty and instructions by inflat-
ing or deflating damage awards based on wrongful specula-
tion about tax consequences. Rather, we agree with the ra-
tionale stated in Justice Blackmun's dissenting opinion:

> It also is "entirely possible" that the jury "may" increase its
> damages award in the belief that the defendant is insured, or
> that the plaintiff will be obligated for substantial attorney's
> fees, or that the award is subject to state (as well as federal)
> income tax, or on the basis of any number of other extraneous
> factors. Charging the jury about every conceivable matter as
> to which it should not misbehave or miscalculate would be
> burdensome and could be confusing.

*Liepelt*, 444 U.S. at 503 (Blackmun, J., dissenting). Accord-
ingly, we decline to make the issue of damage awards more
complicated by injecting income tax consequences.

For the reasons stated in this opinion, the damage award
is reversed. The matter is remanded for a new trial on the
issue of damages in accordance with this opinion.

SCHULTHEIS, C.J., and BROWN, J., concur.