205 P.3d 145 (2009)
Thomas S. BURCHFIEL, et ux., Appellants,
v.
The BOEING CORPORATION, Mary Lou Thomas and John Doe Thomas, and their marital community, Respondents and Cross-Appellants,
Triumph Composite System, Inc., Defendant.
Nos. 25523-9-III, 26091-7-III.
Court of Appeals of Washington, Division 3, Panel Nine.
April 2, 2009.
*148 Robert Allan Dunn, Susan C. Nelson, Dunn & Black PS, Spokane, WA, for Appellants.
James Sanders, Andrew E. Moriarty, Perkins Coie LLP, Seattle, WA, for Respondents.
SWEENEY, J.
¶ 1 The trial court resolved this employment discrimination suit on the defendant's motion as a matter of law. The court's order set aside a jury verdict in favor of the employee and against the employer. We conclude that the record supports the jury's findings of discrimination based on both disability and retaliation. We therefore reverse the judgment in favor of the employer and remand for entry of a judgment on the jury's verdict.

FACTS
¶ 2 The court resolved the factual dispute here as a matter of law. And, so, we view the facts and any reasonable inferences from those facts in a light most favorable to the nonmoving party, the employee, Thomas Burchfiel. Davis v. Microsoft Corp., 149 Wash.2d 521, 531, 70 P.3d 126 (2003).
¶ 3 History. Mr. Burchfiel began working for The Boeing Corporation in 1978. In August 2000, he transferred from Boeing's London facility to a marketing position in Boeing's Spokane plant. The plant produced floor panels and other airplane parts. Boeing hired Mr. Burchfiel to develop a market for replacement floor panels.
¶ 4 Mr. Burchfiel was diagnosed with chronic lymphocytic leukemia in August 2001. The disease is a progressive, typically slow-growing form of leukemia marked by mutated white blood cells that collect in bodily organs. He was 46 years old. Patients with the disease may tire easily, feel short of breath after exercise, or suffer infections due to a compromised immune system. His physician categorized Mr. Burchfiel as a stage 0 (the lowest level of cancer activity). Mr. Burchfiel was, nonetheless, very alarmed by his illness. He reported to his doctors that he was extremely stressed by his job. The oncologist recommended periodic blood tests and no treatment until further symptoms appeared. And the doctor recommended that he reduce his stress from his work.
¶ 5 Later that month, Mr. Burchfiel met with his supervisor, general manager Sue Grimm. He told her about his diagnosis and *149 requested a short-term leave of absence starting in early September 2001. Ms. Grimm okayed the leave and he went to North Carolina for nontraditional therapy from an osteopathic doctor. The osteopath requested a one-year leave of absence for Mr. Burchfiel. Mr. Burchfiel's health insurance denied his claim for long-term disability benefits in November 2001. He returned to work in Spokane in late December 2001 after his disability payments stopped.
¶ 6 Terrorists destroyed the World Trade Center on September 11, 2001. As a result, Boeing began a production slow-down and put its Spokane plant up for sale. More than one third of the employees were laid off by April 2002.
¶ 7 Mr. Burchfiel returned to work in December 2001. He found that his belongings had been packed up and moved and another employee occupied his old office. His sales position was in limbo. Ms. Grimm tried to find a position for him that was less stressful than marketing.
¶ 8 Mary Lou Thomas replaced Ms. Grimm as general manager on April 1, 2002. Mr. Burchfiel sent Ms. Thomas and two other managers an e-mail the next day. He told them that he had two medical conditions: adrenal cortex failure and the leukemia. He explained that both conditions cause severe fatigue. And he represented that his disease was considered terminal at his age. Three days later, Mr. Burchfiel's marketing position was declared a "layoff position."
¶ 9 Ms. Thomas offered Mr. Burchfiel the options of a replacement full-time position as an operations program analyst or a layoff. The new position offered the same salary as the old one. It was, nonetheless, a downgrade in status level. Mr. Burchfiel thought it would "severely limit any potential salary growth despite the level of job performance." Ex. P-36. He accepted the new position. But he also called the ethics committee to complain about it.
¶ 10 Triumph Composite Systems, Inc., purchased Boeing's Spokane plant in late November 2002. Around the same time, Mr. Burchfiel printed an article from the Jewish World Review on a Boeing printer. The article questioned whether racial discrimination explained the high incidence of illegitimacy, crime, and illiteracy in the urban black community.
¶ 11 Ms. Thomas ordered the issuance of something called a written corrective action memo. It informed Mr. Burchfiel that he had violated company policy by downloading and printing nonbusiness material of "questionable content from the [I]nternet." Ex. P-47. The memo also said that the material "was left on a printer and viewed by another employee who found the material to be offensive." Ex. P-47. Mr. Burchfiel asked that the memo be removed from his employee records because he feared that it could affect his employment opportunities with Triumph or with other Boeing facilities. The memo was never removed.
¶ 12 The company informed Mr. Burchfiel in December 2002 that his job at Boeing would be terminated effective February 7, 2003. He filed another ethics complaint in January 2003 against Ms. Thomas. He complained that she was trying to ruin his career by filing the corrective action memo and that her conduct caused him stress that affected his health.
¶ 13 Triumph took over the Spokane plant in January 2003. It offered employment to around 90 percent of Boeing's workers. Mr. Burchfiel applied for a sales and marketing position. But the transition hiring team recommended that he not be hired. The transition team included Ms. Thomas. He was also unable to get a transfer to another Boeing facility and so he left Boeing's employ.
¶ 14 Procedural History. Mr. Burchfiel, et ux., sued Boeing, Triumph, and Ms. Thomas in May 2004 for damages. He alleged as causes of action disability discrimination, misrepresentation, and breach of implied contract. He filed a second amended complaint in March 2005 that added causes of action for (1) discrimination in violation of Washington's law against discrimination, chapter 49.60 RCW, and Boeing policy, (2) retaliation in violation of Washington law and Boeing policy, and (3) Triumph's failure to hire him because of disability.
*150 ¶ 15 Before trial, Mr. Burchfiel moved to limit testimony about an incident in late December 2000 when he visited at the home of Brian and Paula Minter, who were coworkers. Ms. Minter later reported to Ms. Thomas that Mr. Burchfiel appeared drunk and grabbed her breast while her husband was out of the room. The trial court ruled that specific details about sexual misconduct and threats committed during the Minter incident could not be presented to the jury. But the judge allowed some testimony and cross-examination about the incident.
¶ 16 The jury returned a verdict for Mr. Burchfiel and against Boeing and Ms. Thomas. It found that Mr. Burchfiel proved disability discrimination and retaliation by Boeing and Ms. Thomas, but had not proved disability discrimination by Triumph. The jury awarded him $1,007,000 in damages for lost wages and benefits to date, future lost wages and benefits, and emotional distress. The jury awarded Ms. Burchfiel damages for loss of consortium.
¶ 17 Boeing and Ms. Thomas appealed on September 18, 2006. On that same date, Boeing and Ms. Thomas moved for judgment as a matter of law. Mr. Burchfiel appealed in October 2006. The trial court granted judgment for Boeing and Ms. Thomas as a matter of law in April 2007. Mr. Burchfiel appealed that judgment. We granted permission to enter the amended judgment, consolidated all of the appeals, and realigned the parties so that Mr. Burchfiel, et ux. was now the appellant and Boeing and Ms. Thomas were the respondents/cross-appellants.

DISCUSSION
JUDGMENT AS A MATTER OF LAW

Qualifying Disability
¶ 18 We first note that the legal landscape has changed since this case was tried and again since the parties perfected this appeal. In McClarty v. Totem Electric, the state Supreme Court held that the federal definition of disability  disability must substantially limit a major life activity  applied when deciding the question of disability under Washington law. 157 Wash.2d 214, 137 P.3d 844 (2006). That opinion was filed shortly before Mr. Burchfiel's suit went to trial. And the court therefore instructed on this federal definition of disability.
¶ 19 The legislature responded by amending the definition of disability in RCW 49.60.040:
The legislature finds that the supreme court, in its opinion in McClarty v. Totem Electric, 157 Wash.2d 214, 137 P.3d 844 (2006), failed to recognize that the Law Against Discrimination [(chapter 49.60 RCW)] affords to state residents protections that are wholly independent of those afforded by the federal Americans with Disabilities Act of 1990 [(42 U.S.C. §§ 12101-12209) ], and that the law against discrimination has provided such protections for many years prior to passage of the federal act.
LAWS OF 2007, ch. 317, § 1. The Supreme Court then concluded in Hale v. Wellpinit School District No. 49 that the retroactive application of the statute was appropriate and did not violate the separation of powers doctrine. 165 Wash.2d 494, 510, 198 P.3d 1021 (2009). The net effect of all of this is that Mr. Burchfiel's claims went to the jury on the more rigorous McClarty standard that required him to show that his disability substantially interfered with a major life activity. McClarty, 157 Wash.2d at 228, 137 P.3d 844. He convinced the jury, but ultimately not the judge, that his disability met that standard.
¶ 20 Boeing agrees that Hale is controlling but argues, nonetheless, that we should remand for a new trial because its whole trial strategy was based on the McClarty standard. Suppl. Br. of Resp'ts/Cross-Appellants at 13-17.
¶ 21 We review an order on a motion for judgment as a matter of law de novo. Sing v. John L. Scott, Inc., 134 Wash.2d 24, 29, 948 P.2d 816 (1997). The appropriate question, for us, and for the trial judge, is whether the plaintiff, here Mr. Burchfiel, met his burden of production. Davis, 149 Wash.2d at 531, 70 P.3d 126. And so judgment as a matter of law is, then, appropriate only when, viewing the evidence in the light most favorable to the nonmoving party, the court can say as a matter of law that no substantial *151 evidence or reasonable inference supports the jury's verdict for the nonmoving party. Id.
¶ 22 We address the question whether Mr. Burchfiel met the more rigorous McClarty standard, despite the fact that it no longer applies, for a couple of reasons. First, the case was tried using that standard and so were we to conclude that Mr. Burchfiel met that standard, we need go no further on that issue. And second, Boeing argues, understandably, that its whole trial strategy was geared to the McClarty standard and so it should be given the chance to change its approach in a new trial based on the new legislatively mandated standard. Again, that concern goes away if we conclude that Mr. Burchfiel met the more rigorous McClarty standard.
¶ 23 The court instructed the jury using the McClarty standard for disability:[1]
To establish that he had a disability at any time relevant to the claims in his lawsuit, Mr. Burchfiel must prove by a preponderance of the evidence that he had (1) a physical or mental impairment that substantially limited one or more of his major life activities, (2) a record of such an impairment, or (3) was regarded as having such an impairment.
"Major life activities" are activities that are of central importance to most people's daily lives.
To be "substantially limited" in a major life activity, an individual must have an impairment that prevents or severely restricts the individual from engaging in the major life activity. The impairment's impact must also be permanent or long-term.
Clerk's Papers (CP) at 483. The jury answered "yes" that Mr. Burchfiel had proved he had a disability. CP at 495.
¶ 24 Mr. Burchfiel showed that he had been diagnosed with leukemia, a physical impairment. McClarty, 157 Wash.2d at 228, 137 P.3d 844. He showed that the illness is progressive and generally considered incurable. And he informed Boeing of his disability.
¶ 25 Mr. Burchfiel was considered "asymptomatic" in 2001 because his lymph glands were not yet swollen. He testified, nonetheless, that he suffered from fatigue because of his leukemia and his other adrenal condition. He described a typical work day as: "Well, you go to work, and you're working and working, and suddenly it's like you run out of gas, and there's no reserve tank, and you're just done." Report of Proceedings (RP) at 1024-25. A doctor's report in March 2002 noted that Mr. Burchfiel suffered from "profound fatigue." RP at 1036. His medical records showed that in November 2002 he had difficulty with increasing fatigue and lethargy with a significant increase in his white blood cell count.
¶ 26 The question of disability turns on the effect an impairment has on a person's life, not the diagnosis of the impairment. Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 198, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002).[2] We consider the permanent or long-term impact of the impairment to determine whether a major life activity is restricted. Braunling v. Countrywide Home Loans Inc., 220 F.3d 1154, 1157 (9th Cir.2000). Generally, the claimant must show that the limitation is substantial as compared to the average person or as compared to the impaired person's experience before the impairment. Desmond v. Mukasey, 530 F.3d 944, 955-56 (D.C.Cir.2008).
¶ 27 Extreme fatigue as the result of a physiological condition qualifies as a physical impairment that substantially limits a major life activity. See, e.g., Desmond, 530 F.3d at 955-56 (needing a great deal of sleep may be as debilitating as getting too little); Braunling, 220 F.3d at 1157 (multiple sclerosis patient who suffered the debilitating consequences of extreme fatigue and poor ambulation met the Americans with Disabilities Act of 1990 definition of disabled). Mr. Burchfiel showed that he suffered from profound fatigue almost every day, that it increased *152 in intensity over time, and that he had no realistic hope of improvement. This evidence, viewed in the light most favorable to Mr. Burchfiel, supports this jury's verdict, under the McClarty instructions, that Mr. Burchfiel suffered a qualifying disability. The trial court erred in concluding to the contrary.

Retaliatory Discharge
¶ 28 It is an unfair practice for an employer "to discharge, expel, or otherwise discriminate against any person because he or she has opposed any practices forbidden by this chapter." RCW 49.60.210(1). This cause of action requires an employee to show that (1) he or she engaged in protected activity, (2) the employer took an adverse employment action, and (3) the employee's activity prompted the employer's action. Estevez v. Faculty Club of the Univ. of Wash., 129 Wash.App. 774, 797, 120 P.3d 579 (2005). The employee must also show that retaliation was a substantial factor motivating the adverse employment decision. Allison v. Hous. Auth. of City of Seattle, 118 Wash.2d 79, 96, 821 P.2d 34 (1991). The employee need not, however, prove that the employer's sole motivation was retaliation. Wilmot v. Kaiser Aluminum & Chem. Corp., 118 Wash.2d 46, 70, 821 P.2d 18 (1991).
¶ 29 Here, the court instructed that the protected activity was opposition to discrimination. The jury apparently found that Mr. Burchfiel proved that Boeing's adverse acts or omissions supported his claim of retaliation but that he had not proved that Triumph's failure to hire him was due to retaliation. Later, the trial judge concluded that Mr. Burchfiel failed to prove retaliation and vacated the verdict on that claim.
¶ 30 Again the standard of review here is de novo. Sing, 134 Wash.2d at 29, 948 P.2d 816. The evidence of retaliation was circumstantial. But that is typical in these retaliation cases. Estevez, 129 Wash. App. at 799, 120 P.3d 579. Proximity in time between the protected activity and the adverse employment action is a factor that suggests retaliation. Id.
¶ 31 Ms. Thomas became Boeing's new plant manager in April 2002. Mr. Burchfiel notified her the next day that he had leukemia and adrenal failure, symptoms of severe fatigue, and an impaired immune system. Within a week, Ms. Thomas attended a meeting with her supervisor. She discussed Mr. Burchfiel. Her notes showed he was: "slated for layoff, [but] Sue [Grimm] extended because of illness, risk of lawsuit, and possible less-than-equivalent offer." Ex. P-2. Ms. Thomas then informed Mr. Burchfiel one week later that his job position had been terminated. She offered him a new "less than equivalent" position with the same salary but at a lower employment level. Exs. P-33, P-37. But this demotion would, in Mr. Burchfiel's words, "severely limit any potential salary growth despite the level of job performance." Ex. P-36.
¶ 32 Mr. Burchfiel showed other adverse employment action. In late 2002, Boeing announced its sale to Triumph and Ms. Thomas took over management of the transition team for Triumph's hiring decisions. Mr. Burchfiel showed that shortly thereafter, Ms. Thomas ordered a corrective action memo against him and put it in his personnel file. Ms. Thomas found what she described as an offensive document printed by Mr. Burchfiel on a Boeing printer. The document was introduced into evidence. Ms. Thomas insisted that the memo be placed in Mr. Burchfiel's personnel file. But a Boeing executive testified that other managers recommended merely that he be counseled for his decision to print the document. An inference (certainly there are others) is that the memo was one of many management actions taken by Ms. Thomas and Boeing to punish Mr. Burchfiel for opposing their disability discrimination.
¶ 33 Once an employee establishes a prima facie case of retaliation, the burden of proof shifts to the employer to rebut it. Estevez, 129 Wash.App. at 797-98, 120 P.3d 579. This requires that the employer show a legitimate, nondiscriminatory reason for the employment decision. Id. Here, Boeing presented evidence that Ms. Thomas's management decisions were based on her personal knowledge of Mr. Burchfiel's inappropriate *153 conduct over several years. Boeing also argued that Mr. Burchfiel never opposed any of what he now alleges were discriminatory decisions. Most of his official complaints were about Boeing's lack of support for his sales position.
¶ 34 But it is the jury's job to choose between inferences when the record contains reasonable but competing inferences of both discriminatory and nondiscriminatory actions. Hill v. BCTI Income Fund-I, 144 Wash.2d 172, 186, 23 P.3d 440 (2001). Mr. Burchfiel provided sufficient evidence that retaliation was a factor in Boeing's decisions to demote him and to file the corrective action memo. He met his burden of production. Wilmot, 118 Wash.2d at 70, 821 P.2d 18; Allison, 118 Wash.2d at 96, 821 P.2d 34; Renz v. Spokane Eye Clinic, P.S., 114 Wash. App. 611, 623, 60 P.3d 106 (2002). The trial court then erred in deciding this question as a matter of law.

DAMAGES
¶ 35 Finally, Boeing contends the trial court properly granted a judgment as a matter of law because the jury's damage award could not logically flow from the liability verdict. The jury concluded that Triumph's failure to hire Mr. Burchfiel was neither discrimination nor retaliation. But the jury also concluded that Mr. Burchfiel proved disability discrimination and retaliation based on acts or omissions by the other defendants. Boeing contends that the only damages sought by Mr. Burchfiel were the result of Triumph failing to hire him. It is mistaken. Mr. Burchfiel claimed that his demotion and the corrective action memo reduced his chances for transfer to other Boeing plants.
¶ 36 We will not disturb a jury's damage award unless the award is outside the range of substantial evidence in the record. Bunch v. King County Dep't of Youth Servs., 155 Wash.2d 165, 179, 116 P.3d 381 (2005). And we presume (strongly presume) the jury's verdict is correct. Id. The damages awarded by the jury here fell within the range of the evidence offered by Mr. Burchfiel's expert. Those damages followed actions separate from Triumph's failure to hire. Judgment as a matter of law was not, then, appropriate.

EVIDENCE OF LOST LIFE INSURANCE
¶ 37 Mr. Burchfiel had two Boeing life insurance policies with benefits totaling $575,000 at the time he was fired. And he claims that he was unable to replace this life insurance after he was terminated. The trial court refused to allow him to show the amount of the insurance benefits he lost. He says this was an abuse of the court's discretion.
¶ 38 Mr. Burchfiel had the right to recover actual damages for discrimination. RCW 49.60.030(2); Lords v. N. Auto. Corp., 75 Wash.App. 589, 604, 881 P.2d 256 (1994). The loss of a life insurance policy due to employment discrimination is an actual item of damages that may be recovered. See, e.g., Fariss v. Lynchburg Foundry, 769 F.2d 958, 964-65 (4th Cir.1985); Foster v. Excelsior Springs City Hosp. & Convalescent Ctr., 631 F.Supp. 174, 175 (W.D.Mo.1986). But generally a plaintiff who claims discrimination has a duty to mitigate damages. Lords, 75 Wash.App. at 605, 881 P.2d 256; Foster, 631 F.Supp. at 175. This duty includes the duty to seek replacement insurance. Fariss, 769 F.2d at 966. So the usual measure of damages is the value of the premiums paid, not the proceeds. Id. at 965. The plaintiff must earnestly attempt to secure substitute coverage and be unable to do so to recover the value of the proceeds lost. Id. at 966.
¶ 39 Mr. Burchfiel testified that he could not get a replacement life insurance policy because he knew a life insurance provider would require a blood test. And the blood test would show that he has cancer. Mr. Burchfiel, apparently, did not attempt to procure substitute life insurance and, of course, did not show that costs for such coverage would be prohibitive. Boeing showed that the company's supplemental plan allowed a covered employee to convert coverage to an individual policy. Mr. Burchfiel, on this record, did not attempt to make that conversion.
¶ 40 We review a trial court's exclusion of evidence for abuse of discretion. Hizey v. Carpenter, 119 Wash.2d 251, 268, *154 830 P.2d 646 (1992). Mr. Burchfiel failed to show that he attempted to mitigate the loss of his Boeing life insurance policies. He was, then, entitled to only the value of the premiums paid. Fariss, 769 F.2d at 965; Foster, 631 F.Supp. at 175. The trial court did not abuse its discretion by excluding evidence of the value of the policies' face value.

BOEING'S CROSS-APPEAL

EXCLUSION OF EVIDENCE OF SEXUAL ASSAULT
¶ 41 Boeing begins by noting that central to this or any other employment discrimination case are the motives of the decision makers, here Ms. Thomas and Boeing. Boeing then urges that the court erred when it refused to allow Boeing to present evidence that would have shown a reason, other than disability discrimination, for firing Mr. Burchfiel. Specifically, Ms. Thomas and other Boeing managers had received reports that Mr. Burchfiel sexually assaulted and threatened coworkers (the Minter incident). Boeing also argues that Mr. Burchfiel opened the door to the admission of this evidence, even if the court's initial ruling was correct.
¶ 42 Mr. Burchfiel moved in limine to exclude references to allegations against him of sexual misconduct or harassment. Ms. Thomas would have testified that Ms. Minter complained that Mr. Burchfiel had intimidated her by grabbing her breast while her husband was in another room. The incident allegedly occurred at the Minters' private residence in December 2000. The trial court excluded the details of this testimony as prejudicial.
¶ 43 Elements of the incident were introduced at trial. Ms. Thomas testified during cross-examination:
Q I want to take you back briefly, Ms. Thomas. We do not need to know any specifics, but do you recall having a conversation with a Mrs. Minter regarding Mr. Burchfiel?
A I do.
Q Okay. And who is Mrs. Minter?
A Paula Minter was an employee that worked in the factory. She was also married to a first-line supervisor, who also managed in the facility.
Q Okay. And whatever transpired in this conversation, did it have  did it make an impact on you?
A Yes, it did.
Q Did it affect your judgment as to Mr. Burchfiel?
A Based on previous interactions with Mr. Burchfiel, the incident that was explained to me continued to confirm my doubt of his ability, his integrity, his ability to deal with people and using good judgment.
Q Without covering any specifics whatsoever, what happened with Mrs. Minter?
A There was unwelcomed confrontation that occurred between Mrs. Minter and Mr. Burchfiel. There was no one else around. She was intimidated. She felt scared to be in the work environment, and I encouraged her to go see Sue Grimm.
RP at 824-25. Mr. Burchfiel also described his version of the Minter incident:
Q When did it occur?
A It was on a Christmas break from Boeing. Everything was shut down.
Q Okay. Was it work-related?
A No.
Q And what happened?
A Well, I had been invited to go over for the holidays and see them, and I did go see them.
Q Who invited you?
A The Minter's [sic].
Q And did you go to their house?
A I did.
Q And the reason for going to their house was what?
A To visit.
. . . .
Q ... And what transpired during that evening?
A I arrived there and stayed about 30, 45 minutes, and then Brian and I walked up two blocks to see Bob Rollins.
. . . .

*155 Q When you left with Brian, her husband, was she upset in any form or fashion?
A No.
Q When was the next time you heard anything about your visit to the Minter's [sic] house of December 28, 2000?
A About two weeks later.
Q Okay. And did you ever discuss anything related to that visit on the 28th of 2000 with Ms. Thomas?
A No.
Q Okay. And after you heard about this visit again in about two weeks, did you ever have a relationship with the Minter's [sic] after that?
A Yes.
Q And what was the relationship?
A Cordial relationship.
RP 1093-95.
¶ 44 Boeing cross-examined Mr. Burchfiel. Counsel asked whether Mr. Burchfiel had ever been to the Minters' house again after the December 2000 incident. Mr. Burchfiel said he had not. Defendants' counsel then asked, "In fact, Paula [Minter has] made it known that she's frightened to be around you, hasn't she?" RP at 1485. The court sustained an objection to the question. Boeing then asked Mr. Burchfiel if he remembered Ms. Thomas's predecessor, Ms. Grimm, telling him that Ms. Minter and other coworkers had complained about his actions on the night of the incident. Mr. Burchfiel stated he could not remember discussing the incident with Ms. Grimm.
¶ 45 Ms. Grimm later testified that she met with the Minters and two other Boeing workers after the 2000 Christmas holidays. She stated that Ms. Minter described an incident that had occurred at her house and that Ms. Minter was visibly upset. Ms. Grimm did not make a report of the incident at that time because she felt that an off-site occurrence was not relevant. Even so, she recommended a mental health assessment of Mr. Burchfiel for anger management. At this point in the testimony, plaintiff's counsel objected and the trial court excluded any further questions about the Minter incident. Defendants' counsel complained that Mr. Burchfiel had opened the door by testifying that he had not been drunk and that he could not remember talking to Ms. Grimm about the incident.
¶ 46 Relevant evidence is generally admissible. ER 401, 402; Janson v. N. Valley Hosp., 93 Wash.App. 892, 902, 971 P.2d 67 (1999). But even relevant evidence may be excluded if the danger of unfair prejudice outweighs its probative value. ER 403. We review the trial court's decision balancing the probative value against the prejudicial effect for abuse of discretion. Erickson v. Robert F. Kerr M.D., P.S., Inc., 125 Wash.2d 183, 191, 883 P.2d 313 (1994); Janson, 93 Wash. App. at 902, 971 P.2d 67.
¶ 47 Here, the trial court was concerned with the hearsay nature of the accusations by Ms. Minter. Boeing argued that the information was not hearsay because it was not offered to prove that the incident occurred, but only to show that Ms. Thomas had a nondiscriminatory reason for her actions toward Mr. Burchfiel.
¶ 48 The court first reserved ruling on the admission of the testimony until Boeing could provide reliable evidence that the incident was in Boeing's personnel files and had been a factor in its employment decisions. But Mr. Burchfiel's personnel file does not mention the Minter incident. Boeing argued that the relevance of the incident was not based on whether it actually happened; its relevance was based on Ms. Thomas's knowledge that Ms. Minter complained of it happening. Boeing wanted to admit details of incidents to show that Mr. Burchfiel had committed acts of sexual misconduct against coworkers off-site (although one alleged incident when Mr. Burchfiel put his arm around Ms. Thomas occurred at a company retreat). Ms. Thomas offered to testify that because of these incidents, she and other Boeing managers lost confidence in Mr. Burchfiel's ability to interact with coworkers and customers.
¶ 49 The trial court agreed the testimony was relevant but concluded, nonetheless, that the prejudicial nature of the sexual misconduct details outweighed any probative value. The court ruled that witnesses could only refer generally to complaints made *156 about Mr. Burchfiel's behavior on and off the work site, and that his behavior was a concern for management.
¶ 50 Boeing again broached the subject later in the trial, after Mr. Burchfiel testified. Boeing argued that Mr. Burchfiel's one-sided description of the events the night of the Minter incident opened the door to detailed testimony by defense witnesses. Mr. Burchfiel described the night as a social visit and stated that Ms. Minter did not seem upset with him that night. The other actual details of the incident came out during Boeing's cross-examination.
¶ 51 The trial judge has considerable discretion on these questions of evidence, and, specifically, whether the door has been opened to a line of inquiry. Ang v. Martin, 118 Wash.App. 553, 562, 76 P.3d 787 (2003), aff'd, 154 Wash.2d 477, 114 P.3d 637 (2005). The trial court here concluded that the door had not been opened on the Minter incident. The court noted that Mr. Burchfiel did not refer to specific behavior; he just said that he was not aware of any complaint. And arguably, Mr. Burchfiel's testimony did not open the door to further details, in any event. He simply responded to Ms. Thomas's testimony that he had done something in December 2000 that had upset Ms. Minter. He did not testify outside the scope of a subject already introduced by the defense. He gave a few more details about the evening. But, as we read this record, he did not open the door for any and all hearsay related to the Minter incident.
¶ 52 Ms. Thomas related several incidents that influenced her opinion of Mr. Burchfiel. The trial court limited discussion of these incidents to general impressions so as to avoid prejudice. The first incident occurred at a company retreat, when, as Ms. Thomas described it, "[t]here was an unwelcomed confrontation" between her and Mr. Burchfiel. RP at 775. She explained that after that confrontation, "I didn't trust his judgment. I didn't trust him. It left me feeling embarrassed. It left me feeling intimidated, and, quite frankly, from that day on, I was very uncomfortable being around him." RP at 775. She also referred to a "pencil throwing incident" by Mr. Burchfiel. RP at 826. And she generally referred to complaints by coworkers that confirmed her impression that Mr. Burchfiel did not interact well with his peers. Boeing does not assign error to the trial court's exclusion of the details of these events.
¶ 53 Finally, whether or not we agree with the judge's decision on the scope of inquiry here, it ultimately, and appropriately, was his decision. Janson, 93 Wash.App. at 902, 971 P.2d 67. The trial court here carefully weighed the probative value of the specific alleged sexual misconduct details against their prejudicial effect and limited the testimony to reduce its prejudice. That is a decision that should be left to the discretion of the trial judge. And that is where we will leave it.

INSTRUCTIONS
¶ 54 The standard of review we apply to jury instructions depends on the decision under review. The instructions must be sufficient to allow the parties to argue their theory of the case. Havens v. C & D Plastics, Inc., 124 Wash.2d 158, 165, 876 P.2d 435 (1994). Whether or not that standard has been met is a question of law. Cox v. Spangler, 141 Wash.2d 431, 442, 5 P.3d 1265, 22 P.3d 791 (2000). And, of course, whether the court's instructions to the jury are accurate statements of the law is also a question of law that we review de novo. State v. Becklin, 163 Wash.2d 519, 525, 182 P.3d 944 (2008). But once these threshold requirements have been met, we then review the judge's wording, choice, or the number of instructions for abuse of discretion. Stiley v. Block, 130 Wash.2d 486, 498, 925 P.2d 194 (1996).

Business Judgment and Apportionment of Damages
¶ 55 Boeing's proposed instruction on business judgment explained that even unfair conduct by an employer will not support a verdict for the employee unless the employer's actions constitute discrimination:
In reaching your verdict about Mr. Burchfiel's claim, you are not to second-guess a defendant's business decisions or *157 to otherwise substitute your judgment for the business judgment exercised by the defendant. That is, you may not find in favor of Mr. Burchfiel simply because you disagree with the defendant's conduct or because you believe that the defendant's conduct was unreasonable or unfair. It does not matter whether the defendant's conduct was wise, fair, correct, or consistent with its policies or commitments  as long as it did not constitute disability discrimination or unlawful retaliation.
CP at 434.
¶ 56 The court instructed the jury that to establish disability discrimination Mr. Burchfiel had to prove that he had a disability and that this disability was a substantial factor in Boeing's decision to discipline, demote, or not hire him. That was a correct statement of the law on disability discrimination. RCW 49.60.180; McClarty, 157 Wash.2d at 221, 137 P.3d 844. The court also instructed the jury that to establish unlawful retaliation Mr. Burchfiel had to prove that he opposed what he believed was disability discrimination and that this opposition was a substantial factor in Boeing's decision to discipline, demote, or not hire him. That is also a correct statement of the law on retaliation. RCW 49.60.210(1); Estevez, 129 Wash.App. at 797, 120 P.3d 579.
¶ 57 Boeing could then and did argue that Mr. Burchfiel was not disabled. It argued under the court's instructions that even if he was disabled, Boeing did not discriminate against him based on that disability. Boeing could also argue that it did not retaliate based on Mr. Burchfiel's disability. And the jury could then have found for Mr. Burchfiel only if it found that Boeing's treatment of Mr. Burchfiel was motivated by his disability or by his opposition to Boeing's discrimination.
¶ 58 Boeing's proposed instruction on the business judgment rule is not inappropriate; but it also added nothing new to the essential elements Mr. Burchfiel had to prove. He had to show disability discrimination or retaliation to prevail. The trial court did not abuse its discretion in rejecting the proposed instruction because Boeing was able to argue its theory of the case on the instructions as given. Havens, 124 Wash.2d at 165, 876 P.2d 435.
¶ 59 Boeing also contends that the trial court compounded its error by rejecting a proposed curative instruction on the apportionment of damages. The cited pages in the report of proceedings (RP (July 27, 2006) at 169-71) do not clearly show that Boeing requested or offered a curative instruction. And Boeing provides no explanation how such an instruction relates to the proposed business judgment instruction, in any event.

Adverse Employment Action Instruction
¶ 60 Boeing next argues that the court erred when it refused to instruct the jury on a material issue of fact  whether its conduct amounted to an adverse employment action. After all, it notes that Mr. Burchfiel was moved to another job at the same salary. Boeing's proposed instruction defined "adverse employment action":
To take "adverse employment action" means to refuse to hire, to discharge, to demote, or otherwise to discriminate in compensation or in other terms and conditions of employment. To amount to a change in the terms and conditions of employment, an action must be more than an inconvenience or alteration of job responsibilities.
CP at 431.
¶ 61 Again, the instructions given by the court easily accommodated Boeing's theory of the case. Mr. Burchfiel had to prove that the alleged discrimination or retaliation was a substantial factor in Boeing's decision to discipline, demote, or fail to hire him. "Adverse employment action" is simply another way to describe discipline, demotion, or failure to hire. This phrase is ultimately redundant. And, therefore, the trial court did not abuse its discretion in rejecting the proposed instructions. Havens, 124 Wash.2d at 165, 876 P.2d 435.

MS. BURCHFIEL'S LOSS OF CONSORTIUM CLAIM
¶ 62 Boeing next argues that even if this court reinstates the jury verdict, the damages awarded to Ms. Burchfiel on her loss of *158 consortium claim should be vacated. Boeing contends (1) loss of consortium is available only when the spouse suffers physical or bodily injury, causing the other spouse to be deprived of society and affection; and (2) none of the complaints filed in this case included a claim for loss of consortium.
¶ 63 Damages for loss of consortium are proper when a spouse suffers loss of love, society, care, services, and assistance due to a tort committed against the impaired spouse. Lund v. Caple, 100 Wash.2d 739, 744, 675 P.2d 226 (1984); Conradt v. Four Star Promotions, Inc., 45 Wash.App. 847, 852-53, 728 P.2d 617 (1986). The cases cited by Boeing state that loss of consortium damages are based upon a bodily injury to the spouse who can no longer perform the spousal functions. See Reichelt v. Johns-Manville Corp., 107 Wash.2d 761, 773, 733 P.2d 530 (1987); Christie v. Maxwell, 40 Wash.App. 40, 47-48, 696 P.2d 1256 (1985). The trial court addressed this issue in a hearing on a motion in limine. It ruled that physical injury to the deprived spouse is not necessary to support loss of consortium.
¶ 64 Washington's law against discrimination is liberally construed to deter and eradicate discrimination. Blaney v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. No. 160, 151 Wash.2d 203, 214, 87 P.3d 757 (2004). Chapter 49.60 RCW provides catchall damages for "`any other appropriate remedy,'" along with injunctive relief, actual damages, and the costs of the suit. RCW 49.60.030(2); Blaney, 151 Wash.2d at 214, 87 P.3d 757. Violation of the law against discrimination is a tort. Davis, 149 Wash.2d at 552, 70 P.3d 126 (Chambers, J., dissenting); Blair v. Wash. State Univ., 108 Wash.2d 558, 576, 740 P.2d 1379 (1987). And damages for loss of consortium are awarded when a person loses affection and services as a result of a tort committed against the person's spouse. Conradt, 45 Wash.App. at 852-53, 728 P.2d 617. Nothing in Washington's version of the law against discrimination seems to limit recovery to damages arising from bodily injury. We conclude, then, that the trial court properly includes loss of consortium damages to the deprived spouse even when the impaired spouse suffered solely economic, emotional, or psychological injury due to discrimination. This is especially true given Washington's liberal policy to award all appropriate damages to a victim of discrimination. Blaney, 151 Wash.2d at 214, 87 P.3d 757.
¶ 65 The trial court also rejected Boeing's argument in limine that the Burchfiels failed to give proper notice of the loss of consortium claim. The court noted that the pleadings referred to Ms. Burchfiel by the term "et ux." and stated, "Plaintiff was married to Patricia Burchfiel when the acts complained of herein are not only injurious to Plaintiff, but to the marital community composed of Plaintiff and his wife." CP at 74-75. The trial court also allowed Mr. Burchfiel to amend his complaint after he rested his case to specifically allege loss of consortium. That is another decision vested in the discretion of the trial judge. CR 15(a); Wilson v. Horsley, 137 Wash.2d 500, 505, 974 P.2d 316 (1999).
¶ 66 Moreover, Washington is a notice pleading state. We require only a "short and plain statement of the claim showing that the pleader is entitled to relief." CR 8(a)(1); Champagne v. Thurston County, 163 Wash.2d 69, 84, 178 P.3d 936 (2008). The pleadings must be construed to do substantial justice. CR 8(f). "A complaint fails to meet this standard if it neglects to give the opposing party `fair notice.'" Champagne, 163 Wash.2d at 84, 178 P.3d 936.
¶ 67 The Burchfiels' complaint alleged disability discrimination and retaliation and claims of damages by both Mr. Burchfiel and Ms. Burchfiel. The original complaint did not specifically seek recovery for loss of consortium. It prayed instead for damages "including, but not limited to" wage loss and emotional distress and further prayed generally for "such other and further relief as deemed just, lawful, and equitable by the Court." CP at 87. The notice here was legally adequate. And the court did not abuse its discretion by allowing an amendment to conform to the proof, even if the notice was inadequate. In re Disciplinary Proceedings Against Bonet, 144 Wash.2d 502, 509-10, 29 P.3d 1242 (2001).

*159 ATTORNEY FEES
¶ 68 Mr. Burchfiel requests attorney fees and costs incurred on appeal. RCW 49.60.030(2) authorizes an award of attorney fees to the prevailing party on appeal. Riehl v. Foodmaker, Inc., 152 Wash.2d 138, 153, 94 P.3d 930 (2004). Mr. Burchfiel is entitled to attorney fees on appeal. RAP 18.1; RCW 49.60.030(2); Riehl, 152 Wash.2d at 153, 94 P.3d 930.
¶ 69 We reverse the court's order granting judgment as a matter of law and remand for entry of a judgment on the jury's verdict. We affirm the court's evidentiary rulings and its refusal to give Boeing's proposed jury instructions. And we award Mr. Burchfiel his attorney fees.
WE CONCUR: KULIK, A.C.J., and KORSMO, J.
NOTES
[1] McClarty was filed on July 6, 2006 and the court's jury instructions were filed on July 28.
[2] We look to federal precedence for guidance in employment discrimination cases. Janson v. N. Valley Hosp., 93 Wash.App. 892, 900, 971 P.2d 67 (1999).