216 P.3d 1077 (2009)
Robert M. HOUGH, Appellant,
v.
Frank W. STOCKBRIDGE and Susan D. Stockbridge, husband and wife, and the marital community comprised thereof, Respondents.
No. 37382-3-II.
Court of Appeals of Washington, Division 2.
September 15, 2009.
*1080 Garold Edwin Johnson, Kram Johnson Wooster & McLaughlin, Tacoma, WA, for Appellant.
S. Christopher Easley, The Easley Law Group PS, Tacoma, WA, for Respondents.
SWEENEY, J.
¶ 1 This appeal follows the successful prosecution of a claim for abuse of process. The appellant first sued for defamation. The respondents then counterclaimed for abuse of *1081 process. The defamation case was ultimately dismissed and the case proceeded to a jury verdict in favor of the respondents on the abuse of process claim. The appellant's essential argument here on appeal is that the court's instructions to the jury allowed the jury to find liability for abuse of process for proceedings other than original process and without a finding that process was used to extort something. The court's instructions required the jury to find an ulterior purpose and an act in the use of legal process not proper in the regular prosecution of the proceedings. We conclude that this adequately states the requirements for a cause of action for abuse of process. And we further conclude that the evidence here easily supports the elements of that cause of action. We therefore affirm the judgment entered on the verdict in favor of the respondents.

FACTS
¶ 2 Robert Hough sued Frank and Susan Stockbridge for defamation and malicious prosecution. The Stockbridges responded and pleaded a claim of abuse of process:
Plaintiff [Hough] is abusing the superior court, and wasting the superior court's time....
....
... [Defendants Stockbridge pray] [f]or a judgment against the Plaintiff in favor of the Defendants for his harassment of the court system in having to once again answer and defend themselves in a frivolous lawsuit.
Clerk's Papers (CP) at 76; accord CP at 88. The case went to arbitration. The arbitrator awarded the Stockbridges $5,000 in damages and $20,315 in attorney fees. Mr. Hough demanded a trial de novo and a jury. The trial judge proceeded without a jury. And Mr. Hough appealed. Hough v. Stockbridge, noted at 129 Wash.App. 1037, 2005 WL 2363795. We reversed the judgment and remanded for a jury trial in an unpublished opinion. Hough, 129 Wash.App. 1037, 2005 WL 2363795, at *4.
¶ 3 Mr. Hough then proceeded to file more than 49 motions, pleadings, and discovery documents between September 2001 and October 2007. Many of the discovery documents were redundant, and many of the motions were not filed pursuant to any established court rule or procedure. Each motion, however, required that the Stockbridges respond and/or appear in court.
¶ 4 The Stockbridges disclosed their former attorneys, Scott Candoo and Lafcadio Darling, as witnesses before trial.
¶ 5 The jury trial began on November 5, 2007. The Stockbridges called their former attorneys to testify. Their testimony was essentially the same as in the earlier bench trial. The Stockbridges first asked Mr. Candoo and Mr. Darling about their backgrounds and experience as attorneys. Mr. Candoo then offered his opinion about whether Mr. Hough complied with civil discovery rules and about the proper basis for a motion for reconsideration. And Mr. Darling testified about the proper procedure for dismissing a claim under CR 41. Mr. Hough objected to the testimony as improper expert testimony. The court overruled the objections. The Stockbridges rested.
¶ 6 The trial judge then shared a note she received from a juror:
Your Honor:
Has Mr. Hough been evaluated by a mental health professional? There is little doubt that this man is delusional & would be diagnosed with obsessive compulsive disorder (OCD). Does the court have authority to order such an evaluation?
(No need to respond to this)

CP at 189. Mr. Hough moved to dismiss the juror who wrote the note "for having determined an opinion before even [having] heard all the evidence." Report of Proceedings (RP) at 629. The judge denied the motion because she was not convinced that the juror had already reached a decision in the case.
¶ 7 Mr. Hough then filed a written motion to dismiss the juror. He again argued that the juror should be dismissed because the note showed "the juror is not going to keep an open mind regarding Mr. Hough's testimony or evidence." CP at 215 (emphasis omitted). He maintained that the note was *1082 "evidence of someone whose mind is made up." CP at 216 (emphasis and internal quotation marks omitted). The court denied Mr. Hough's motion.
¶ 8 The court instructed the jury on the law after Mr. Hough presented his case. The court told the jury that abuse of process required proof of the improper use of legal process and an ulterior purpose of accomplishing an end which the process was not designed to accomplish.
¶ 9 The jury concluded that Mr. Hough was liable for abuse of process and awarded the Stockbridges $200,500.00 in damages, including $30,467.08 for attorney fees and costs. The trial court then awarded the Stockbridges an additional $40,844.50 in costs and attorney fees under Mandatory Arbitration Rule (MAR) 7.3. The court also ordered postjudgment interest on the Stockbridges' judgment in the amount of "12% [per] annum, or maximum allowable by law." CP at 361.

DISCUSSION

Motion for More Definite Statement
¶ 10 The court denied Mr. Hough's motion for a more definite statement of the Stockbridges' abuse of process counterclaim. Mr. Hough claims this was error. He maintains that the Stockbridges' pleadings are insufficient because they did not notify him of the facts underlying the claim after it was filed in 2002. He argues that the facts supporting the Stockbridges' abuse of process claim occurred, and were offered as proof, long after they filed the counterclaim.
¶ 11 We review the denial of a CR 12(e) motion to make a more definite and certain statement for abuse of discretion. Evans v. Goist, 90 Wash. 100, 155 P. 780 (1916). A court abuses its discretion by exercising that discretion on untenable grounds or for untenable reasons. State ex rel. Carroll v. Junker, 79 Wash.2d 12, 26, 482 P.2d 775 (1971).
¶ 12 Mr. Hough twice moved for a more definite statement of the Stockbridges' abuse of process claim. He argued that "[d]espite the Court of Appeals finding that the [Stockbridges] adequately plead[ed] this counterclaim, notice pleading requires that I be advised of the real issues, which are alleged, not merely some vague `inferences.'" CP at 3.
¶ 13 The trial court denied Mr. Hough's motion primarily because we already concluded that the Stockbridges adequately pleaded abuse of process:
1. As ruled by the Court of Appeals, the Stockbridges adequately plead[ed] their counterclaim, and said counterclaim was acknowledged by Hough on several occasions prior to the bench trial of that matter. The Court of Appeals has finally ruled that Stockbridges' allegations sufficiently satisfy general notice pleading requirements.
2. Where as here, a completed bench trial of a counterclaim has been had, and a transcript of that trial has been received, and where as here, the Court of Appeals has finally ruled on the sufficiency of the pleadings, a motion for a more definite statement of the counterclaim's allegations must be denied.
CP at 143. Simply put, these are tenable grounds for this trial judge to deny the motion.
¶ 14 An appellate court's decision "governs all subsequent proceedings in the action in any court" once the appellate court issues a mandate "unless otherwise directed upon recall of the mandate ..., and except as provided in rule 2.5(c)(2)." RAP 12.2. We rejected Mr. Hough's argument that the Stockbridges did not properly plead their abuse of process counterclaim in the first appeal of this case. Hough, 129 Wash.App. 1037, 2005 WL 2363795, at *7. We concluded that the Stockbridges' allegations satisfied notice pleading requirements:
Although the Stockbridges' counterclaim did not use the term "abuse of process," they implied such a claim when they set forth their abuse of the superior court and harassment of the court system claims. Moreover, Hough acknowledged the Stockbridges' counterclaim for abuse of process on several occasions. Accordingly, the Stockbridges' allegations sufficiently satisfied *1083 our general notice pleading requirements and Hough's argument fails.
Hough, 129 Wash.App. 1037, 2005 WL 2363795, at *7 (footnote omitted).
¶ 15 A mandate has been filed in that appeal and has not been recalled. See Court of Appeals No. 31813-0-II (mandate filed Feb. 8, 2007). And Mr. Hough is not asking us to reconsider our earlier decision on this issue. RAP 2.5(c)(2). Our decision on this issue in the first appeal, then, governed the proceedings at the trial court level after remand, including the trial court's decision to deny Mr. Hough's CR 12(e) motion. RAP 12.2.

Expert TestimonyAttorney Witnesses
¶ 16 Mr. Hough next assigns error to the trial judge's decision to allow two witnesses to express expert opinions. He argues these witnesses were not properly disclosed as experts according to Pierce County Local Rules (PCLR). He argues that the witnesses were instead disclosed as lay witnesses and that the court should not have permitted them to express expert opinions.
¶ 17 We review the trial court's admission of testimony for abuse of discretion. Hoglund v. Meeks, 139 Wash.App. 854, 875, 170 P.3d 37 (2007); City of Seattle v. Apodaca, 18 Wash.App. 802, 803, 572 P.2d 732 (1977). A trial court abuses its discretion when it bases its decision on an erroneous view of the law. Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wash.2d 299, 339, 858 P.2d 1054 (1993).
¶ 18 The Stockbridges disclosed their former attorneys as lay witnesses. Their witness list did not expressly indicate whether the witnesses would offer lay or expert testimony. But the list included "[a] brief description of [Mr. Candoo's and Mr. Darling's] relevant knowledge." PCLR 5(d)(2); see CP at 388-89. That is the proper way to disclose a lay witness under PCLR 5. To disclose an expert witness, the Stockbridges needed to also include "[a] summary of the expert's anticipated opinions and the basis therefore and a brief description of the expert's qualifications or a copy of curriculum vitae if available." PCLR 5(d)(3). The witness list here did not include this additional information.
¶ 19 These witnesses, nevertheless, offered expert legal opinions at trial. Expert testimony is testimony based on "scientific, technical, or other specialized knowledge." ER 702. The Stockbridges qualified Mr. Candoo and Mr. Darling as experts. Mr. Candoo then offered his opinion on whether Mr. Hough complied with civil discovery rules and on the proper basis for a motion for reconsideration. Mr. Darling testified about the proper procedure for dismissing a claim under CR 41. This testimony was based on Mr. Candoo's and Mr. Darling's technical or specialized knowledge of the law. Mr. Hough objected to the testimony, but the court overruled the objections.
¶ 20 Mr. Hough essentially argues that the trial court failed to properly apply PCLR 5. A trial court may, however, admit expert testimony for good cause and subject to conditions even if a party fails to properly disclose an expert witness in its witness list. PCLR 5(e); Stevens v. Gordon, 118 Wash. App. 43, 51, 74 P.3d 653 (2003). Mr. Hough contends that the rule barred Mr. Candoo's and Mr. Darling's testimony because the Stockbridges did not provide good cause for their failure to properly disclose the witnesses as experts. The court here, however, concluded that good cause justified admitting the expert testimony:
[The witnesses] are expected to testify as they previously did at the first trial of this matter. Mr. Hough previously heard the testimony. Given Mr. Hough's appeal of the case, he must also have transcripts of this testimony and thus has more than sufficient knowledge to satisfy the court rule PCLR 5.
CP at 8-9. And it ruled before trial that Mr. Candoo and Mr. Darling would "not be allowed to testify as experts unless or until qualified by the trial judge." CP at 9. The parties do not dispute that Mr. Candoo and Mr. Darling were properly qualified as experts. And there is no showing here that their testimony was any different than their testimony in the first nonjury trial of this case. Mr. Hough should certainly have *1084 known what they would say. And we therefore find no abuse of discretion.

Refusal to Dismiss a Juror
¶ 21 Mr. Hough next assigns error to the court's refusal to dismiss a juror for cause. An unidentified juror asked the court about ordering a mental health evaluation of Mr. Hough.
¶ 22 We also review for abuse of discretion a trial court's decision whether to dismiss a juror. State v. Depaz, 165 Wash.2d 842, 858, 204 P.3d 217 (2009); State v. Elmore, 155 Wash.2d 758, 778, 123 P.3d 72 (2005). A court abuses its discretion when its decision rests on facts unsupported by the record. Depaz, 165 Wash.2d at 858, 204 P.3d 217.
¶ 23 Mr. Hough contends that the trial court abused its discretion by refusing to dismiss the juror who wrote the note suggesting that Mr. Hough had mental or emotional problems and should be evaluated. He argues that the note is a sufficient showing of unfitness. A judge must dismiss "any juror[] who[,] in the opinion of the judge, has manifested unfitness as a juror by reason of bias, prejudice, indifference, inattention or any physical or mental defect or by reason of conduct or practices incompatible with proper and efficient jury service." RCW 2.36.110 (emphasis added).
¶ 24 Actual bias is "the existence of a state of mind on the part of the juror in reference... to either party, which satisfies the court that the challenged person cannot try the issue impartially and without prejudice to the substantial rights of the party challenging." RCW 4.44.170(2). And Mr. Hough argued that the note showed the juror had already decided against him.
¶ 25 The trial judge has the authority to find facts before deciding whether to dismiss a juror for misconduct. State v. Jorden, 103 Wash.App. 221, 229, 11 P.3d 866 (2000). The judge weighs the credibility of the challenged juror based on her observations. Id. The question for the judge is whether the challenged juror can set aside preconceived ideas and try the case fairly and impartially. Ottis v. Stevenson-Carson Sch. Dist. No. 303, 61 Wash.App. 747, 752-53, 812 P.2d 133 (1991). We defer to the judge's factual determinations. Jorden, 103 Wash. App. at 229, 11 P.3d 866.
¶ 26 The trial judge here considered the juror's note and the parties' arguments. She then concluded that the juror was not biased:
MR. HOUGH: Can I ask ... for a ruling by the Court ... that apparently that juror has already decided?
THE COURT: That would not be my finding at this point, no.
RP at 630. She, accordingly, denied Mr. Hough's motion to dismiss the juror.
¶ 27 The record supports the judge's decision. The juror's note did not say that the juror could not be fair or impartial. It suggested personality traits that Mr. Hough ultimately agreed withthat he was compulsive. CP at 215. We conclude, then, that the judge did not abuse her discretion by refusing to dismiss this juror. State v. Noltie, 116 Wash.2d 831, 840, 809 P.2d 190 (1991).

InstructionsAbuse of Process
¶ 28 Mr. Hough next argues that the court's instructions defining abuse of process (Jury Instructions 7, 8, 9, and 10) are not correct statements of the law. He asserts that the instructions did not inform the jury that abuse of process "requires `a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort.'" Appellant's Br. at 17 (internal quotation marks omitted) (quoting Loeffelholz v. Citizens for Leaders with Ethics and Accountability Now (C.L.E.A.N.), 119 Wash.App. 665, 699-700, 82 P.3d 1199 (2004)). Mr. Hough maintains that the court's instructions allowed the jury to find that his extensive motion and discovery practices constituted abuse of process without also finding that he was using "process" to improperly obtain a collateral advantage outside the purview of the case. He contends the instructions allowed the jury to base its verdict on only his subjective intent. And this, he says, was wrong.
¶ 29 We review jury instructions de novo to ensure they correctly state the law, *1085 do not mislead the jury, and allow parties to argue their theories of the case. Burchfiel v. Boeing Corp., 149 Wash.App. 468, 491, 205 P.3d 145 (2009). "[O]nce these threshold requirements have been met, we then review the judge's wording, choice, or the number of instructions for abuse of discretion." Id. So the question before the court is not whether the trial judge could have given other instructions given the pleadings and evidence here. See id. The question, instead, is whether the instructions the court gave were accurate statements of the law and whether Mr. Hough could argue his theory of the case with those instructions. See id.
¶ 30 Mr. Hough urges that the court's instructions on abuse of process had to include the phrase "requires `a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort.'" Appellant's Br. at 17 (internal quotation marks omitted) (quoting Loeffelholz, 119 Wash.App. at 699-700, 82 P.3d 1199).
¶ 31 The court defined abuse of process to require proof of the improper use of legal process and an ulterior purpose of accomplishing an end which the process was not designed to accomplish:
"Abuse of process" is the misuse of the power of the court. It is an act done in the name of the court and under its authority by means of use of a legal process not proper in the conduct of a proceeding for an ulterior purpose(s) or motive(s).
CP at 310 (Jury Instruction 7). Mr. Hough did not object to this instruction.
¶ 32 The judge also explained that the essential elements of a claim of abuse of process are:
(1) The existence of an ulterior purpose to accomplish an object not within the proper scope of the process, and
(2) An act in the use of legal process not proper in the regular prosecution of the proceedings.
The test as to whether there is abuse of process is whether the process has been used to accomplish some end which is without the regular purview of the process; or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be compelled to do.
CP at 311 (Jury Instruction 8);
The ulterior motive or purpose may be inferred from what is said or done about the process, but the improper act may not be inferred from the motive. The purpose for which the process is used, once it is issued, is the only thing of importance.
CP at 312 (Jury Instruction 9); and
One who uses a legal process against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by his abuse of process.
CP at 313 (Jury Instruction 10).
¶ 33 These instructions correctly state the law on abuse of process. Abuse of process is "`the misuse or misapplication of the process, after it has once been issued, for an end other than that which it was designed to accomplish.'" Loeffelholz, 119 Wash.App. at 699, 82 P.3d 1199 (emphasis and internal quotation marks omitted) (quoting Batten v. Abrams, 28 Wash.App. 737, 745, 626 P.2d 984 (1981)). It has similarly been defined as "an act after filing suit using legal process empowered by that suit to accomplish an end not within the purview of the suit." Batten, 28 Wash.App. at 748, 626 P.2d 984. Abuse of process requires two essential elements: "(1) the existence of an ulterior purposeto accomplish an object not within the proper scope of the processand (2) an act in the use of legal process not proper in the regular prosecution of the proceedings." Fite v. Lee, 11 Wash.App. 21, 27, 521 P.2d 964 (1974). The instructions here required proof of both of these essential elements and, therefore, accurately stated the law.
¶ 34 Moreover, the court did not abuse its discretion by rejecting the phrase proposed by Mr. Hough. The suggested phrase was not necessary. The proposed "form of extortion" clause is one way to describe the improper action element of abuse of process. Loeffelholz, 119 Wash.App. at 699-700, 82 P.3d 1199. But the court here described that element as "some collateral thing which [the *1086 Stockbridges] could not legally and regularly be compelled to do." CP at 311. This language comes from Batten, 28 Wash.App. at 746-47, 626 P.2d 984. The remaining phrase, "it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort," is adequately paraphrased in Jury Instruction 9 as "once it is issued." CP at 312. Again, the phrase proposed by Mr. Hough was unnecessary. The court's instructions correctly stated the law and permitted Mr. Hough to argue his theory of the case.

Substantial EvidenceAbuse of Process
¶ 35 Mr. Hough's next assignment of error follows from his challenges to the court's instructions to the jury. He argues that abuse of process requires proof of a form of extortion. And, he continues, the Stockbridges did not show that he used his summons and complaint or initiated any other post-summons-and-complaint "process" to extort property or money from the Stockbridges. Mr. Hough argues that his motions, discovery requests, responses, and writing style cannot support a finding of liability because those actions were taken within the scope of the case and did not initiate any "process."
¶ 36 Again, abuse of process requires proof of two elements:
(1) the existence of an ulterior purpose to accomplish an object not within the proper scope of the processand (2) an act in the use of legal process not proper in the regular prosecution of the proceedings.
Fite, 11 Wash.App. at 27, 521 P.2d 964. Mr. Hough argues that the Stockbridges did not produce sufficient evidence of the second element. That element is established by showing that legal process (except filing suit) has been used to accomplish some unlawful end or to compel the adverse party to do some collateral thing that the party could not legally be compelled to do. Batten, 28 Wash. App. at 746-47, 626 P.2d 984; Fite, 11 Wash. App. at 28, 521 P.2d 964. "[T]here must be an act after filing suit using legal process empowered by that suit to accomplish an end not within the purview of the suit." Batten, 28 Wash.App. at 748, 626 P.2d 984.
¶ 37 Mr. Hough argues that "process" means original process "such as a summons, mandate or writ to exercise its authority over a person or property. `Process' is the pleadings used to `acquire or exercise its jurisdiction over a person or specific property.'" Appellant's Br. at 11-12. He then argues that his use, or even abuse, after the litigation starts will not support a claim for abuse of process. Specifically, he argues that "stubborn, vigorous persistence in the litigation even where the conduct is combined hostile ill will, the intent to harass and increase litigation expenses and where the defending party [Mr. Hough] has made groundless and false allegations" is not enough to support the verdict here. Appellant's Br. at 12.
¶ 38 There are several problems with this argument at this stage of these proceedings. First, Mr. Hough did not propose an instruction at trial that would have defined "process" for the jury, as he now argues that term should have been defined. And the failure to do so precludes argument here on appeal. Loeffelholz, 119 Wash.App. at 708-09, 82 P.3d 1199. Second, Mr. Hough's argument would fail even if we were to reach the issue because "the `mere institution of a legal proceeding even with a malicious motive does not constitute an abuse of process.'" Loeffelholz, 119 Wash.App. at 699, 82 P.3d 1199 (emphasis added) (quoting Fite, 11 Wash.App. at 27-28, 521 P.2d 964). And, third, we do not read the definition of "process" as narrowly as Mr. Hough. Mr. Hough's take on "process" would essentially permit abuse once the litigation has started. That is not the law, nor in our judgment should it be. See, e.g., Loeffelholz, 119 Wash. App. at 699-700, 82 P.3d 1199. Indeed, one definition of process includes "`all the acts of a court from the beginning to the end of its proceedings in a given cause.'" State v. Duffey, 97 Wash.App. 33, 40-41, 981 P.2d 1 (1999) (quoting Black's Law Dictionary 1205 (6th ed.1990)). Depositions, motions, interrogatories and other requests for discovery or legal maneuverings to compel or prohibit action by an opponent all invoke the authority *1087 of the court. They are, therefore, the type of process that will support an abuse of process claim.
¶ 39 And the Stockbridges showed more than simply technical shortcomings with the legal process used by Mr. Hough. See id. at 44, 981 P.2d 1 (concluding that a technically deficient request for a bill of particulars did not support a conviction for barratry). They showed, and the jury ultimately found, that Mr. Hough's conduct following the commencement of the suit was not proper in the regular course of proceedings and was calculated to accomplish a purpose not within the proper scope of the process. That finding is easily supported by the record and by both the volume and the nature of Mr. Hough's conduct throughout this litigation.
¶ 40 Legal procedures must be used in a manner consistent with the purpose for which the procedure is designed. Bd. of Educ. of Farmingdale Union Free Sch. Dist. v. Farmingdale Classroom Teachers Ass'n, Inc., Local 1889, 38 N.Y.2d 397, 404, 380 N.Y.S.2d 635, 343 N.E.2d 278 (1975). Motions, pleadings, and other legal memoranda are not designed to harass another party, cause unnecessary delay, or needlessly increase another party's litigation costs. See CR 11(a).
¶ 41 Mr. Hough filed at least 49 separate motions and discovery requests in this litigation. Many of Mr. Hough's motions were not filed pursuant to any established court rule or procedure. Each motion, however, required that the Stockbridges respond or appear in court. A jury could, and did, infer from the frequency, number, and nature of Mr. Hough's motions and other process that the documents were not only improper but filed to harass the Stockbridges and increase their cost of litigation. There is, then, sufficient evidence to support the second element of abuse of process. We will not disturb the jury's verdict. Winbun v. Moore, 143 Wash.2d 206, 213, 18 P.3d 576 (2001).
¶ 42 Mr. Hough also argues for the first time in his reply brief that no evidence supports the jury's damages award. We do not, however, consider issues raised for the first time in a party's reply brief. In re Marriage of Sacco, 114 Wash.2d 1, 5, 784 P.2d 1266 (1990). And, moreover, there was ample evidence of damages in this record.

Attorney Fees
¶ 43 Mr. Hough next argues that the jury, and not the judge, should have determined the amount of damages, including attorney fees. And he argues that there is no legal basis for the Stockbridges' fee award.
¶ 44 "Whether a party is entitled to an award of attorney fees is a question of law that we review de novo." Bloor v. Fritz, 143 Wash.App. 718, 747, 180 P.3d 805 (2008). We review the amount of an award for abuse of discretion. Mahler v. Szucs, 135 Wash.2d 398, 435, 957 P.2d 632, 966 P.2d 305 (1998).
¶ 45 Mr. Hough first contends that the trial court erred by awarding attorney fees to the Stockbridges on the ground that those fees were an element of damages arising from his abuse of the legal process and should, therefore, have been determined by the jury.
¶ 46 Washington law, however, permits trial courts to determine attorney fee awards when authorized by law:
When authorized, the determination of a reasonable attorney fee award is a matter within the discretion of the trial court. Boeing Co. v. Sierracin Corp., 108 Wash.2d 38, 65, 738 P.2d 665 (1987). A party is not, therefore, entitled to have such a determination made by a jury. In re Marriage of Firchau, 88 Wash.2d 109, 114-15, 558 P.2d 194 (1977).
Jacob's Meadow Owners Ass'n v. Plateau 44 II, LLC, 139 Wash.App. 743, 759, 162 P.3d 1153 (2007).
¶ 47 Attorney fees must be determined by the trier of fact only when the measure of the recovery of attorney fees is an element of damages. See id. at 759-60, 162 P.3d 1153. Attorney fees are considered damages when the defendant's wrongful act causes the plaintiff to be involved in litigation with others. Id. at 759, 162 P.3d 1153.
¶ 48 The Stockbridges have sued only Mr. Hough as a result of his wrongful actions. And Mr. Hough cites no authority *1088 for the proposition that attorney fees are an element of damages in an abuse of process case. The Stockbridges' attorney fees, then, are costs and not an element of damages. See id. The trial court here, however, apparently considered the Stockbridges' attorney fees to be an element of damages because it asked the jury to determine damages, including attorney fees. And the jury awarded the Stockbridges more than $30,000 in attorney fees.[1] Mr. Hough, nonetheless, does not have a right to a jury determination of the amount of attorney fees to which the Stockbridges were entitled. Id.
¶ 49 Mr. Hough next contends that the trial court's award was not authorized by law. A court may award attorney fees when authorized by a statute, rule, contract, or recognized ground of equity. Bloor, 143 Wash.App. at 746-47, 180 P.3d 805.
¶ 50 The trial court here awarded the Stockbridges $40,844.50 in attorney fees and costs for the trial de novo pursuant to MAR 7.3, CR 11, and RCW 4.84.185. CP at 371.
¶ 51 MAR 7.3 provides that "[t]he court shall assess costs and reasonable attorney fees against a party who appeals the [arbitration] award and fails to improve the party's position on the trial de novo." According to this rule, then, the court was required to award attorney fees to the Stockbridges if Mr. Hough failed to improve his position at trial. Wiley v. Rehak, 143 Wash.2d 339, 348, 20 P.3d 404 (2001).
¶ 52 Mr. Hough maintains that MAR 7.3 implicitly requires that the case tried at trial de novo be the same case tried at arbitration before attorney fees can be awarded. He claims that the Stockbridges claimed malicious prosecution at arbitration and then claimed abuse of process at the trial de novo. We have read the record, and the case arbitrated is the same case that was tried de novo at Mr. Hough's request.
¶ 53 A party does not improve its position if a superior court judgment is entered against it for more than the arbitration award. Hutson v. Costco Wholesale Corp., 119 Wash.App. 332, 335, 80 P.3d 615 (2003). Here, the jury awarded the Stockbridges $200,500 in damages. The arbitrator awarded the Stockbridges only $5,000. It was Mr. Hough who requested trial de novo. And it was Mr. Hough who did not improve his position at trial. MAR 7.3, then, authorized the court's attorney fees award. And because it does, we need not analyze whether CR 11 and RCW 4.84.185 also authorize the award.
¶ 54 Mr. Hough further argues that the trial court's attorney fees award was unreasonable. He correctly maintains that an attorney fees award under MAR 7.3 is limited to fees incurred after a party files a request for trial de novo: "Only those costs and reasonable attorney fees incurred after a request for a trial de novo is filed may be assessed under this rule." MAR 7.3. Mr. Hough argues that he should not have to pay for attorney fees the Stockbridges incurred for pursuing a malicious prosecution claim that was dismissed and a bench trial decision that was reversed on appeal. He also maintains that he should not have to pay the Stockbridges' appellate attorney fees or any fees related to motions that he won.
¶ 55 The trial court awarded the Stockbridges $40,844.50 in costs and attorney fees. This amount represents only the fees and costs incurred by the Stockbridges for the jury trial. It does not include fees and costs incurred as a result of Mr. Hough's first appeal, the bench trial, or the arbitration. Mr. Hough, moreover, does not provide any authority for his argument that he should not have to pay the Stockbridges' attorney fees that are related to motions on which he prevailed. The trial court's award was properly based on MAR 7.3

Interest Rate
¶ 56 Mr. Hough next takes issue with the interest rate the court applied to the fees, costs, and principal judgment. The summary of judgment sets the postjudgment interest *1089 rate on the Stockbridges' judgment at "12% [per] annum, or maximum allowable by law." CP at 361 (emphasis added).
¶ 57 Judgments in tort cases bear interest at a special rate established by RCW 4.56.110(3):
Judgments founded on the tortious conduct of individuals ... shall bear interest from the date of entry at two percentage points above the equivalent coupon issue yield, as published by the board of governors of the federal reserve system, of the average bill rate for twenty-six week treasury bills as determined at the first bill market auction conducted during the calendar month immediately preceding the date of entry. In any case where a court is directed on review to enter judgment on a verdict or in any case where a judgment entered on a verdict is wholly or partly affirmed on review, interest on the judgment or on that portion of the judgment affirmed shall date back to and shall accrue from the date the verdict was rendered.
(Emphasis added.) This subsection sets out the "maximum allowable by law." CP at 361. The interest rate set out in the judgment is correct.

Stockbridges' Claim for Fees
¶ 58 The Stockbridges also argue that the trial court erred by awarding them only $40,844.50, which was the amount incurred for the jury trial. They argue the court should have awarded $77,791.24 for fees and costs incurred after the arbitration award. The court exercised its discretion properly by excluding from the fee award the amounts the Stockbridges paid for the bench trial and the first appeal. The appeal reversed the bench trial judgment and ordered a new trial by jury. Mr. Hough, then, improved his position on the first appeal, barring the Stockbridges from an award for those fees and costs under MAR 7.3. See Boyd v. Kulczyk, 115 Wash.App. 411, 417, 63 P.3d 156 (2003) (granting fees because party who requested trial de novo and failed to improve his position thereon also failed to improve his position on appeal).

Attorney Fees on Appeal
¶ 59 The Stockbridges request fees and costs under RAP 18.1 on the basis that Mr. Hough's appeal is frivolous. They also request fees pursuant to RCW 4.84.185, CR 11, MAR 7.3, and recognized grounds in equity.
¶ 60 The party that fails to achieve a better result by a trial de novo and also fails to achieve a better result by appealing to the Court of Appeals is liable for reasonable fees and costs. Boyd, 115 Wash. App. at 417, 63 P.3d 156. We award the Stockbridges fees for this appeal because Mr. Hough did not improve his position at trial de novo and did not prevail on appeal.
¶ 61 We affirm the judgment entered on the jury's verdict and award fees on appeal.
WE CONCUR: BRIDGEWATER and HUNT, JJ.
NOTES
[1] Mr. Hough did not challenge the propriety of the jury's fee award. We, therefore, will not address the issue.