# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| HANNAH JONES, | ) | No. 70422-2-I |
| | ) | |
| Appellant. | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| REGENCY PACIFIC, INC., | ) | UNPUBLISHED |
| | ) | |
| Respondent. | ) | FILED: December 22, 2014 |
| | ) | |

Cox, J. — Hannah Jones seeks to overturn a judgment on an adverse jury verdict based on claims that the trial court failed to ensure an impartial jury and that juror misconduct and juror bias deprived her of a fair trial. Because the trial court did not abuse its discretion in addressing these claims, we affirm.[1]

Jones sued Regency Pacific, Inc. for negligence and other causes of action after developing injuries while receiving post-operative care at one of Regency's facilities. The parties tried the case to a jury in King County Superior Court.

During the presentation of Jones's case in chief, Leann Cox (Juror 11) informed the bailiff that she lived in the same neighborhood as one of Regency's

---

[1] We grant the Motion for Limited Admission Pursuant to APR 8(b) (Pro Hac Vice) of Jacques Balette dated September 11, 2014.

two attorneys.[2] The bailiff put this on the record on February 28, 2013, out of the presence of the jury. At that time, Jones asked the court to excuse Juror 11.

On February 28, the bailiff reported that Juror 11 lived in the same neighborhood as one of Regency's attorneys. The bailiff stated that Juror 11 had not recognized the attorney when asked during voir dire, but recognized her about two weeks into the trial. According to the bailiff, Juror 11 also said that she walked in the neighborhood, had seen Regency's attorney and her son, and knew the name of Regency's attorney's son. Moreover, according to the bailiff, Juror 11 "wanted [the court] to know that it was on her mind," but that she also said that "she is an adult, and she can put that aside, and she feels she can be here."[3]

The trial court denied Jones's motion to excuse Juror 11, without prejudice, and encouraged Jones to bring the motion anew when the case was ready to go to the jury. At this time, Jones stated that she had made her record.

On March 4, 2013, Juror 11 spoke to Regency's attorney while passing her in the hallway. Regency's attorney disclosed this immediately thereafter in open court, out of the presence of the jury, and stated that Juror 11 had said "this is hard."[4] At that time, Jones took no action in response to this disclosure.

---

[2] The author of this opinion is neither related to nor acquainted with Leann Cox (Juror 11), the juror in question.

[3] Report of Proceedings (Feb. 28, 2013) at 8-9.

[4] Report of Proceedings (Mar. 04, 2013) at 36-37.

On March 20, 2013, Jones renewed her motion to excuse Juror 11. The trial court indicated that it had been thinking of this situation throughout the trial and again denied the motion.

At the conclusion of the trial, the jury found that Regency was not liable.

After the jury returned the verdict, Jones moved for a new trial, claiming juror misconduct. The court considered declarations submitted by the parties, the remaining record, and counsel's arguments before denying this motion. The court then entered an amended judgment on the jury verdict for Regency.

Jones appeals.

## DUTY TO DISMISS UNFIT JURORS

Jones argues that the trial court abused its discretion by not questioning Juror 11 before denying, without prejudice, the request to excuse her during the presentation of evidence at trial. We hold that the court did not abuse its discretion.

Under RCW 2.36.110, the court must dismiss unfit jurors. This statute creates a "continuous obligation" of the court.[5]

RCW 2.36.110 gives trial courts discretion in deciding whether to dismiss a juror. This discretion extends to the manner in which the court investigates alleged misconduct.[6] Washington courts "are unwilling to impose on the trial court a mandatory format for establishing [the] record."[7]

---

[5] State v. Jorden, 103 Wn. App. 221, 227, 11 P.3d 866 (2000).

[6] Id. at 229.

[7] Id.

3

We review a trial court's decision whether to dismiss a juror for abuse of discretion.[8]

In Hough v. Stockbridge, a juror submitted a note stating that the defendant appeared to have mental health problems and asking whether the court had the authority to order a mental health evaluation.[9] The defendant moved to have the juror dismissed because of bias.[10] The court considered the note, heard argument from the parties, and determined that the juror was not biased.[11] Division Two of this court held that the trial court did not abuse its discretion because the record supported the court's decision.[12]

Here, the trial court properly exercised its fact finding discretion when it denied, without prejudice, Jones's motion to dismiss Juror 11 without first questioning her.

The present case resembles Hough. Instead of a juror's note, the court relied on the information that the bailiff put on the record, in open court and out of the presence of the jury. At that time, Regency's attorney provided, on the record, more details about her relationship with Juror 11 and the nature of their neighborhood. Under Hough, it was within the court's discretion to make a decision about whether to dismiss Juror 11 based on this information.

---

[8] State v. Depaz, 165 Wn.2d 842, 852, 204 P.3d 217 (2009).

[9] 152 Wn. App. 328, 335, 216 P.3d 1077 (2009).

[10] Id. at 335-36.

[11] Id. at 341.

[12] Id.

4

In sum, nothing in the language of RCW 2.36.110 requires the court to question a juror before deciding whether to excuse the juror. Accordingly, the trial judge did not violate RCW 2.36.110 by failing to question Juror 11 after she revealed she was Regency's attorney's neighbor.

Jones argues that the trial court had an affirmative duty to develop the record by questioning Juror 11. We disagree.

Significantly, Jones did not ask the court to question Juror 11 at the time this issue arose. Moreover, Jones did not ask for permission to question Juror 11. Thus, Jones now argues, for the first time, that the trial court abused its discretion for failing to take actions that Jones did not request below.

Jones supports this argument with citations to cases from the Fifth and Sixth Circuits.[13] Neither case supports Jones's arguments.

In United States v. Nell, the trial court refused to permit additional voir dire that the defendant had requested.[14] After a potential juror answered a general voir dire question in a way that indicated he might be biased, the defendant requested permission to ask the juror more specific questions.[15] The trial court denied this request.[16] The Fifth Circuit held that this denial was error.[17]

---

[13] Brief of Appellant at 11 (citing U.S. v. Nell, 526 F.2d 1223 (5th Cir. 1976); Hughes v. U.S., 258 F.3d 453 (6th Cir. 2001)).

[14] 526 F.2d 1223, 1228 (5th Cir. 1976).

[15] Id.

[16] Id.

[17] Id. at 1230.

In the present case, Jones never requested to question Juror 11. Thus, Nell is distinguishable.

In Hughes v. United States, a potential juror stated during voir dire that she could not be fair.[18] Neither the court nor defense counsel asked any follow up questions, and the juror was impaneled.[19] The Sixth Circuit held that failure to question this biased juror was ineffective assistance of counsel that prejudiced the defendant.[20]

This case is distinguishable. In the present case, Juror 11 never said she could not be fair. Rather, according to the information that the bailiff put on the record, Juror 11 felt she could be fair. Accordingly, reliance on this case is not persuasive.

We also note that at the time the trial court denied the motion, there does not appear to have been anything in the record that established either actual or implied bias of Juror 11. Thus, the trial court properly denied the motion, without prejudice to Jones renewing her motion later in the trial.

For these reasons, the trial court did not abuse its discretion when it denied, without prejudice, Jones's request to excuse Juror 11.

Jones also argues that the trial court violated its duty to ensure an impartial jury by failing to inform the parties about reported juror misconduct.

---

[18] 258 F.3d 453, 456 (6th Cir. 2001).

[19] Id.

[20] Id. at 464.

Jones bases her argument on the declaration of Charles Hunger, who served as an alternate juror. He states in his declaration that during the fifth week of trial, he told the bailiff that the case was "on the verge of a mistrial."[21] He allegedly told the bailiff that four jurors, including Juror 11, were discussing the case during recesses.[22] He also stated that this group of jurors was referring to Jones's attorneys as "out of staters" and "rich lawyers."[23]

During the hearing on the motion for a new trial, the court noted that the alternate juror's declaration conflicted with the bailiff's recollection of events.[24] The court put on the record that "[t]here are some aspects of [the alternate juror's] affidavit that do not correspond to the bailiff's clear recollection of how those conversations developed."[25]

Jones argues that if the court had disclosed and investigated this report, it would have revealed Juror 11's bias. This argument fails for two reasons. First, the record does not clearly show that the court in fact received reports of alleged juror misconduct. Second, as discussed later in this opinion, the alleged report fails to establish misconduct.

---

[21] Clerk's Papers at 351 (internal quotation marks omitted).

[22] Id. at 351-52.

[23] Id. at 352 (internal quotation marks omitted).

[24] Report of Proceedings (May 17, 2013) at 18.

[25] Id.

It is unclear what the alternate juror reported to the bailiff during trial. As discussed earlier, the court noted that the alternate juror's declaration conflicted with the bailiff's "clear recollection."[26] It is for the trial court to resolve conflicting evidence, and it did so here. There simply is no basis for this court to side with Jones's representations to this court on factual matters that the trial court resolved adversely to her below.

Further, as discussed later in this opinion, the court considered these allegations of misconduct when Jones moved for a new trial. The court concluded that these allegations did not show misconduct.

## DENIAL OF MOTION FOR A NEW TRIAL

Jones next argues that the trial court abused its discretion when it denied her motion for a new trial. She advances several different theories to support this claim. Jones argues that Juror 11 committed misconduct during voir dire; that Juror 11 was actually or impliedly biased; and that the jury committed misconduct during trial. Because these arguments are all unpersuasive, we reject them.

We review a trial court's denial of a motion for a new trial for abuse of discretion.[27] "'The test for determining such an abuse of discretion is whether such a feeling of prejudice [has] been engendered or located in the minds of the jury as to prevent [the] litigant from having a fair trial.'"[28]

---

[26] Report of Proceedings (May 17, 2013) at 18.

[27] Hickok-Knight v. Wal-Mart Stores, Inc., 170 Wn. App. 279, 324, 284 P.3d 749 (2012), review denied, 176 Wn.2d 1014 (2013).

[28] Id. at 325 (internal quotations omitted) (quoting Collins v. Clark County Fire Dist. No. 5, 155 Wn. App. 48, 81, 231 P.3d 1211 (2010)).

As a preliminary matter, Regency argues that Jones waived her right to move for a new trial by waiting until after the jury returned its verdict before moving for a new trial. We disagree.

In order to preserve the right to move for a new trial, a party needs to make a timely objection or a timely request for relief.[29] The party does not need to specifically request a new trial.[30] If a party waits until after the jury has returned its verdict to object or request relief, the party waives the right to move for a new trial.[31]

Here, Jones moved to excuse Juror 11 during the trial. This was a timely request for relief, and the trial court denied the motion, without prejudice. Before jury deliberations began, Jones renewed the motion, as the trial court had suggested, and when alternate jurors were available. There was no waiver.

*Claimed Juror Misconduct During Voir Dire*

Jones argues that Juror 11 committed misconduct during voir dire by failing to disclose that she was Regency's attorney's neighbor. We hold there was no such misconduct.

A party is entitled to a new trial based on juror misconduct when it shows that "a juror failed to answer honestly a material question on voir dire and . . . a

---

[29] 4 KARL TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE, CR 59 author's cmts. at 525 (6th ed. 2013).

[30] Id.

[31] Id.

correct response would have provided a valid basis for a challenge for cause."[32] When a juror unintentionally answers a question incorrectly in voir dire, it is not misconduct.[33]

Here, the trial court found that Juror 11 had unintentionally failed to disclose during voir dire that she was Regency's attorney's neighbor. The record supports this finding. In Juror 11's declaration, she states that she did not recognize Regency's attorney during voir dire. She states that she had only met Regency's attorney once and did not recognize her until the second week of trial, during the presentation of evidence. The court also relied on the fact that Juror 11 had later voluntarily reported that she was Regency's attorney's neighbor to the bailiff. Thus, substantial evidence supports the trial court's finding of unintentional failure to disclosure.

Therefore, Juror 11's nondisclosure was unintentional and was not misconduct. Even if there were not substantial evidence to support the court's finding, there is nothing to show that a correct answer would have supported a challenge for cause. Thus, for both reasons, there is simply nothing in this record to support a different result from that reached by the trial court.

Jones argues that the trial court erred by finding that Juror 11's failure to disclose was unintentional. Specifically, Jones argues that Juror 11's declaration is false, and the trial court should not have believed it. But, as discussed above,

---

[32] In re Pers. Restraint of Elmore, 162 Wn.2d 236, 267, 172 P.3d 335 (2007).

[33] See In re Det. of Broten, 130 Wn. App. 326, 337-38, 122 P.3d 942 (2005).

substantial evidence supports the trial court's finding. Further, appellate courts do not reweigh credibility determinations on appeal.[34]

Jones fails in her burden to show there was misconduct by Juror 11.

*Actual Bias*

Jones also argues that Juror 11 was actually biased, and because Juror 11 was actually biased, the trial court abused its discretion by denying her motion for a new trial. We disagree.

Actual bias is "the existence of a state of mind on the part of the juror in reference to the action, or to either party, which satisfies the court that the challenged person cannot try the issue impartially and without prejudice to the substantial rights of the party challenging."[35] The trial court must dismiss any juror who, "in the opinion of the judge" is unfit due to actual bias.[36]

"The trial judge has fact finding discretion in determining whether to grant or deny a juror's dismissal based on bias."[37] The judge can evaluate the juror's credibility.[38]

---

[34] State v. Brockob, 159 Wn.2d 311, 336, 150 P.3d 59 (2006).

[35] RCW 4.44.170(2).

[36] RCW 2.36.110.

[37] State v. Kloepper, 179 Wn. App. 343, 353, 317 P.3d 1088, review denied, 180 Wn.2d 1017 (2014).

[38] Id.

We review the trial court's determination of whether to dismiss a juror for abuse of discretion.[39]

Here, the trial court properly ruled that Juror 11 was not actually biased. Juror 11 stated in her declaration that during the whole trial she felt she could be "fair and impartial." She explained that while she was surprised that she was still on the jury, she trusted the judgment of the court. These statements were consistent with the earlier record established by the bailiff when she related Juror 11's disclosure that she was a neighbor of one of Regency's attorneys.

Under RCW 2.36.110, the court must dismiss a juror if the juror is biased "in the opinion of the judge." The trial court ruled that Juror 11 was not biased, even if she made the comments other jurors attributed to her. The record supports this decision. Thus, the decision not to dismiss Juror 11 was not an abuse of discretion, as it falls within "'the range of acceptable choices, given the facts and the applicable legal standard.'"[40]

Jones argues that Juror 11 was biased because of comments she allegedly made to other jurors. Juror 11 said that she told another juror that she "was shocked [that] it had not made a difference to the Court that [Regency's attorney] was [Juror 11's] neighbor." That juror also reported that Juror 11 said that she should not be on the jury, and that "it was a miracle" that she had not

---

[39] Depaz, 165 Wn.2d at 852.

[40] State v. Dye, 178 Wn.2d 541, 548, 309 P.3d 1192 (2013) (quoting In re Marriage of Littlefield, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997)).

been removed from the jury. Jones argues that these comments show Juror 11 knew she was biased.

But these comments do not show that the trial court abused its discretion. It is for the trial court, not a juror, to determine whether a juror is unfit or biased. And Juror 11's declaration is evidence that she was not biased. The trial court determines credibility, and although it did not make express findings about credibility, it apparently chose to believe Juror 11's declaration. Because the record supports the trial court's decision, it was not an abuse of discretion.

Jones also argues that the trial court failed to "resolve doubts against the juror." But Jones does not identify any doubts that the trial court had about Juror 11. She points only to the court's statement that "[Juror 11] has been on [the court's] mind throughout the entire trial."

Instead, Jones argues that the trial court should not have believed Juror 11's declaration, and should not have relied on the bailiff's statements about what Juror 11 said. We simply do not agree with this view.

*Implied Bias*

Jones also argues that Juror 11 was impliedly biased, and because Juror 11 was impliedly biased, the trial court abused its discretion by denying her motion for a new trial. We again disagree.

Implied bias is "the existence of the facts . . . [that] in judgment of law disquali[fy] the juror."[41] There are two doctrines of implied bias.

---

[41] RCW 4.44.170(1).

13

The first implied bias doctrine is statutory—RCW 4.44.180 lists exclusive grounds for an implied bias challenge. Under RCW 4.44.180, a juror can only be impliedly biased for four reasons:

(1) Consanguinity or affinity within the fourth degree to either party.

(2) Standing in the relation of guardian and ward, attorney and client, master and servant or landlord and tenant, to a party; or being a member of the family of, or a partner in business with, or in the employment for wages, of a party, or being surety or bail in the action called for trial, or otherwise, for a party.

(3) Having served as a juror on a previous trial in the same action, or in another action between the same parties for the same cause of action, or in a criminal action by the state against either party, upon substantially the same facts or transaction.

(4) Interest on the part of the juror in the event of the action, or the principal question involved therein, excepting always, the interest of the juror as a member or citizen of the county or municipal corporation.

Courts broadly construe RCW 4.44.180(4). "Because a great variety of fact patterns can arise, a trial court must have a measure of discretion in determining what constitutes an interest."[42] Case law shows that an "interest" under RCW 4.44.180(4) can be attenuated. For example, in an employment discrimination case against a credit union, a juror who was a member of the credit union, had a small amount of money in an account there, and had an outstanding loan from the union, was found to have an "interest."[43]

---

[42] Kuhn v. Schnall, 155 Wn. App. 560, 574, 228 P.3d 828 (2010) (internal quotation marks omitted).

[43] Carle v. McChord Credit Union, 65 Wn. App. 93, 107-09, 827 P.2d 1070 (1992).

Under RCW 4.44.180, "[a] juror's acquaintance with a party, by itself, is not grounds for a challenge for cause."[44]

The second implied bias doctrine is constitutional. Under the Sixth Amendment, the court can also find implied bias in "certain exceptional circumstances."[45] "One such circumstance is when a prospective juror deliberately withholds information during voir dire in order to increase the likelihood of being seated on the jury."[46]

Here, Juror 11 was not impliedly biased under RCW 4.44.180. An acquaintance to a party does not create implied bias.[47] An acquaintance with a party's attorney is a more tenuous connection to the case than an acquaintance with a party. Thus, it follows that a juror's acquaintance with a party's attorney, by itself, is not implied bias.

The trial court ruled that the fact that Juror 11 lived in the same neighborhood as Regency's attorney did not support a challenge for cause. Living in the same neighborhood as a party's attorney does not fall into any of RCW 4.44.180's categories. The fact that Juror 11 knew Regency's attorney by virtue of living in the neighborhood falls short of establishing implied bias. Thus, this decision was not an abuse of discretion.

---

[44] State v. Tingdale, 117 Wn.2d 595, 601, 817 P.2d 850 (1991).

[45] State v. Boiko, 138 Wn. App. 256, 260-61, 156 P.3d 934 (2007).

[46] State v. Cho, 108 Wn. App. 315, 325, 30 P.3d 496 (2001).

[47] Tingdale, 117 Wn.2d at 601.

Jones argues that Juror 11's relationship as Regency's attorney's neighbor created an "interest" in the outcome under RCW 4.44.180(4). Jones submitted documents showing that Juror 11's neighborhood has protective covenants, which all residents can enforce through litigation. Jones argues that this creates an incentive for Juror 11 and Regency's attorney to maintain a positive relationship, a relationship that an adverse jury verdict would threaten.

But as discussed earlier, the trial court has a "measure of discretion in determining what constitutes an interest."[48] The trial court was entitled to reject the argument that mere protective covenants create the required interest.

Juror 11 was also not impliedly biased under the Sixth Amendment doctrine. It is unclear whether that doctrine applies to this civil case. But even if the doctrine does apply, this is not an "exceptional circumstance," as the cases require.

Jones argues that when a juror withholds a material fact during voir dire, it creates a presumption of implied bias, even if the disclosure is unintentional. Jones cites State v. Boiko to support this proposition.[49]

That case is distinguishable because it involved multiple connections between the juror and the case. Specifically, the juror was married to a key witness, had met the victim, had previously heard about the case, knew the prosecutor, had applied for a job in the prosecutor's office, and was litigating a

---

[48] Kuhn, 155 Wn. App. at 574 (internal quotation marks omitted).

[49] 138 Wn. App. 256, 156 P.3d 934 (2007).

16

case in which the prosecutor was defense counsel.[50] Thus, that case, unlike the present case, clearly involved "exceptional circumstances." Accordingly, Jones's reliance on Boiko is misplaced.

*Jury Misconduct*

Jones also argues that the jury committed misconduct by discussing the case before deliberation and making derogatory remarks about her attorneys. We again disagree.

A trial court can grant a new trial based on juror misconduct when there is "'sufficient misconduct to establish a reasonable doubt that plaintiff was denied a fair trial.'"[51]

This court reviews for abuse of discretion a denial of a motion for a new trial because of misconduct.[52] "'The test for determining such an abuse of discretion is whether such a feeling of prejudice [has] been engendered or located in the minds of the jury as to prevent [the] litigant from having a fair trial.'"[53]

---

[50] Id. at 259, 263.

[51] Turner v. Stime, 153 Wn. App. 581, 588, 222 P.3d 1243 (2009) (internal quotation marks omitted) (quoting Gardner v. Malone, 60 Wn.2d 836, 847, 376 P.2d 651 (1962)).

[52] Hickok-Knight, 170 Wn. App. at 324.

[53] Id. at 325 (internal quotations omitted) (quoting Collins, 155 Wn. App. at 81).

Here, the trial court did not abuse its discretion by denying a new trial. The alleged misconduct in this case did not create a reasonable doubt that the trial was not fair.

During trial, some jurors allegedly called Jones's attorneys "rich lawyers" and "out of staters," and stated that they were "a real suing machine." Other jurors denied making or hearing these statements. One person, who was an alternate in the case, stated that some jurors discussed the case before deliberations. Three jurors, including Juror 11, denied that the jury discussed the merits of the case before deliberations.

The court ruled that the alleged comments about "rich lawyers" were not misconduct. The court reasoned that the comments reflected general feelings of "underlying anger or envy" towards lawyers that are common in the public.[54] The court did not believe the comments reflected a prejudice towards Jones's attorneys that affected the verdict. During voir dire, Jones had informed the jury that she was seeking 33 million dollars in damages. The court noted that the high amount of damages "really set this jury on its heels," and may have caused some of the alleged comments.[55]

Overall, there was some controverted evidence that indicated the jury had discussed the case before deliberations. And the court, which had the opportunity to observe the jurors, believed that the alleged comments about

---

[54] Report of Proceedings (May 17, 2013) at 44.

[55] Id.

Jones's lawyers did not reflect a prejudice that denied Jones a fair trial. Thus, the court did not abuse its discretion by denying the motion for a new trial.

Jones cites two cases to support her argument that the jury committed misconduct.[56] Both cases are distinguishable.

In the first case, Turner v. Stime, five members of the jury made racially prejudicial remarks about one of the attorneys.[57] Division Three of this court held that it was not abuse of discretion for the trial court to order a new trial.[58]

In the present case, the allegedly derogatory remarks were not racially motivated. And the trial court found that they reflected general feelings about lawyers rather than prejudice towards Jones's lawyers. Thus, Turner is distinguishable.

Jones also cites Dalton v. State.[59] In that case, one juror felt the plaintiff "was an opportunist trying to profit from her child's death."[60] The court found that the juror concealed this feeling in voir dire, and ordered a new trial on that basis.[61]

---

[56] Brief of Appellant at 28-29 (citing Turner, 153 Wn. App. at 581; Dalton v. State, 115 Wn. App. 703, 63 P.3d 847 (2003)).

[57] 153 Wn. App. 581, 584-87, 222 P.3d 1243 (2009).

[58] Id. at 593.

[59] 115 Wn. App. 703, 63 P.3d 847 (2003).

[60] Id. at 709.

[61] Id. at 717.

But Jones does not allege that the jurors hid animosity towards Jones or her attorneys during voir dire. Additionally, the juror's comment in <u>Dalton</u> showed a stronger bias than the comments allegedly made in this case. Thus, <u>Dalton</u> does not support Jones's argument.

We affirm the superior court's amended judgment and its order denying Jones's motion for a new trial.

Cox, J.

WE CONCUR: