**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| MICHAEL TUIA, | ) | No. 80564-9-I |
| | ) | |
| Appellant, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| STATE OF WASHINGTON, | ) | |
| | ) | UNPUBLISHED OPINION |
| Respondent. | ) | |
| | ) | |

MANN, C.J. — Michael Tuia appeals his conviction for robbery in the first degree and attempting to elude a pursuing police vehicle. He argues that the trial court's dismissal of a juror, as well as its response to a jury question, deprived him of a fair trial. Because the trial court did not abuse its discretion in either respect, we affirm.

I.

On the morning of April 22, 2018, Candice Gruender was working as a barista at Beankini Espresso in Auburn, Washington. Tuia pulled into the drive through and ordered a coffee from Gruender. Once handed his beverage, Tuia spilled it and asked for a replacement lid. When Gruender turned back to hand Tuia his lid, he pointed a gun at her and demanded all of the cash in the till.

Citations and pin cites are based on the Westlaw online version of the cited material.

Patrick Boyd was in the vehicle behind Tuia during this exchange. After seeing Gruender hand Tuia rolls of cash, he called 911 and followed Tuia. Boyd followed Tuia while giving directions to the 911 operator. Boyd followed Tuia until the police arrived. The police ultimately disabled Tuia's vehicle and arrested him.

The State charged Tuia with robbery in the first degree and attempting to elude a pursuing police vehicle.

On the final morning of Tuia's trial, juror 1 failed to appear. When the bailiff called him, juror 1 said he was still in bed in downtown Seattle, but could get to the Kent courthouse in an hour. Because traffic that morning was bad, and juror 1 had not left his house, the trial court did not have confidence in this estimate. It noted that the 12 jurors, staff, interpreters, attorneys, and others, were all waiting on this one juror. Defense counsel requested that the trial court wait for juror 1. While defense counsel agreed that they had a fairly diverse jury, juror 1 was black and the alternate was not a person of color.

The trial court excused juror 1 and continued the trial with the alternate juror.

During Tuia's trial, the State moved to introduce Boyd's 911 call under the present sense impression and excited utterance hearsay exceptions. Tuia objected to a lack of foundation, which the court overruled. The court admitted the call, during which the 911 operator asked Boyd what he was reporting. Boyd stated: "yeah, I just saw a guy robbing an espresso stand."

During a recess after the jury heard the 911 call, Tuia again objected, asserting that the call was hearsay and self-serving. The trial court agreed that a limiting instruction might be appropriate under ER 403 because of the potentially prejudicial

-2-

impact of Boyd explaining he had seen a robbery. Tuia proposed the following limiting instruction, requesting that the jury disregard the portion of the call where Boyd explained he had seen a robbery:

> The jury is instructed to disregard that portion of the 911 call that was made by the witness Patrick Boyd wherein he describes what he knew was going on at the espresso stand when he pulled up behind the old blue Buick and followed that vehicle out of the espresso stand.

The State objected to the instruction, but the trial court allowed it, explaining that it would have likely granted a motion to strike the word "robbery" had one been timely-raised.

During deliberations, the jury submitted a question to the court asking about the evidentiary status of the voices on videos provided to them:

> We are assuming that the voices on the videos are part of the evidence. For example, one of the 911 operators refers to the call as a "robbery," in other portions of [the] video, traffic speeds are called out. Is this assumption correct or not?

Tuia wanted the court to answer "no." Tuia stated that "a reference to a robbery by a 911 operator should not in any way, shape or form become part of this case or the evidence in this case." The trial court instead answered: "please refer to your jury instructions."

The jury convicted Tuia as charged. After an unsuccessful motion for a new trial under CrR 7.5, Tuia appeals.

II.

Tuia argues first that the dismissal of juror 1 deprived him of a fair trial. We disagree.

-3-

We review a trial court's decision to excuse a juror for an abuse of discretion. State v. Hughes, 106 Wn.2d 176, 204, 721 P.2d 902 (1986) (excusing a juror for inattentiveness); State v. Jorden, 103 Wn. App. 221, 224-30, 11 P. 3d 866 (2000) (excusing a juror for inattentiveness despite a defense objection); State v. Ashcraft, 71 Wn. App. 444, 461, 859 P.2d 60 (1993) (upholding a court's discretion in determining when a juror is unable to attend trial). We determine a trial court has abused its discretion only when we are satisfied that "no reasonable person would take the view adopted by the trial court." State v. Huelett, 92 Wn.2d 967, 969, 603 P.2d 1258 (1979).

RCW 2.36.110 governs when a judge may excuse a juror:

> It shall be the duty of a judge to excuse from further jury service any juror, who in the opinion of the judge, has manifested unfitness as a juror by reason of bias, prejudice, indifference, inattention or any physical or mental defect or by reason of conduct or practices incompatible with proper and efficient jury service.

The statute explicitly states that it is the judge's opinion which determines the juror's fitness.

Tuia makes a number of arguments in support of his claim. First, he asserts that CrR 6.5 limits the trial court's dismissal of a juror to situations where he or she is unable to perform their duties.[1] This assertion is inaccurate. CrR 6.5 dictates a scenario wherein a court is required to dismiss a juror, but the rule does not limit other scenarios where the court may use its discretion to dismiss a juror under RCW 2.36.110.

---

[1] CrR 6.5 provides, in relevant part: "If at any time before submission of the case to the jury a juror is found unable to perform the duties the court shall order the juror discharged, and the clerk shall draw the name of an alternate who shall take the jurors place on the jury."

Second, Tuia claims that dismissal of juror 1 denied him the right to participate in jury selection. Tuia fully participated in jury selection, including the alternate that took juror 1's place.

Third, Tuia relies on Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 69 (1986), to assert an equal protection claim. Despite the dismissal of juror 1, there were three black jurors, and persons of color made up the majority of the jury; there is no suggestion that the court violated Tuia's right to equal protection.

Fourth, Tuia relies on Powers v. Ohio, 499 U.S. 400, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991), to assert that juror 1 had a right to serve on his case. Tuia does not have standing to assert this claim. Powers, 499 U.S. at 408 (holding that a defendant does not have standing to rest a claim on a juror's right absent a constitutional violation).

Fifth, Tuia relies on State v. Sassen Van Elsloo, 191 Wn.2d 798, 425 P.2d 807 (2018), for the premise that improper dismissal of a juror requires reversal regardless of prejudice or whether jurors have begun deliberating. This reliance is misplaced. Sassen Van Elsloo instead states that if there is a reasonable possibility a court dismissed an impaneled juror because of his or her views on the merits of the case, reversal is required, but an erroneous dismissal on other grounds undergoes a harmless error analysis. Sassen Van Elsloo, 191 Wn.2d at 802. Here, the trial court dismissed juror 1 for his failure to appear on time, not for his view of the case.

Finally, Tuia relies on Hough v. Stockbridge, 152 Wn. App. 328, 340, 216 P.3d 1077 (2009), for the premise that in order for a court to dismiss a juror, the record must show the juror is biased or prejudiced. This reliance is also misplaced. The Hough

court was asked to decide whether the trial court abused its discretion in refusing to dismiss a juror for actual bias after the juror suggested that the plaintiff should undergo a mental health evaluation. Hough, 152 Wn. App. at 340. This court affirmed the trial court's finding that the juror's comment did not demonstrate actual bias because the juror did not indicate an inability to be fair or impartial. Hough, 152 Wn. App. at 340. The court looked for evidence of bias or prejudice, not because it concluded such evidence was required in all cases, but because that was the claim Hough raised on appeal.

Here, the State did not allege and the trial court did not find that juror 1 held an actual bias. He simply failed to appear. The trial court had the bailiff call juror 1, who was still in bed in downtown Seattle. It determined that the juror's estimation of when he could arrive did not seem realistic. Further, every other participant in the trial was present. So as not to delay the trial, the court determined the alternate juror should stand in. This was not an abuse of discretion.

III.

Tuia next contends that the trial court's response to the jury's question regarding the 911 calls deprived him of a fair trial. We disagree.

We review a trial court's decision to give further instructions for an abuse of discretion. State v. Sublett, 176 Wn.2d 58, 82, 292 P.3d 715 (2012). Once a jury begins deliberations, it is within the discretion of the trial court to give further instructions. State v. Ng, 110 Wn.2d 32, 42, 750 P.2d 632 (1988). Here, the jury submitted a question asking if the voices on the videos were part of the evidence including use of the term robbery and traffic speeds. The court responded by referring

the jury to its instructions. The trial court's response instructing the jury to refer to the instructions was not an abuse of discretion.

Tuia relies on State v. Quaale, 182 Wn.2d 191, 197, 340 P.3d 213 (2014), for the proposition that opinion testimony embracing an issue that is otherwise inadmissible, should be excluded. Tuia's argument is misplaced, however, because here the court determined during its pretrial ruling that the 911 call was admissible under ER 701. The only portion of the call the trial court determined should not have been admitted was Boyd's use of the term "robbery." The trial court gave the limiting instruction requested by Tuia, instructing the jury to disregard the portion of the call where Boyd described what was going on.

The remainder of Boyd's call was within the purview of the jury to make a credibility determination. The trial court referred the jury to its instructions, instructions that contained both a note to disregard the portion of Boyd's 911 call describing what he saw, as well as instructions on weighing the evidence. For these reasons, the trial court did not abuse its discretion.

Affirmed.

_Mann, C.J._

WE CONCUR:

_Andrus, A.C.J._        _Leach, J._

-7-